**COASTAL REFINING & MARKETING, INC.,** Coastal Offshore Insurance Limited, and Lexington Insurance Company, **Appellants**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,** **Appellee.**

No. 14–04–00651–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 8, 2007.

Lucy Haroutunian, Ronald E. Tigner and Thomas C. Wright, Houston, for appellants.

Alysia Wightman, Douglas W. Alexander, J. Hampton Skelton, Kyle Mullins Jones, Austin, and Kevin Dubose, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

### SUBSTITUTE OPINION

EVA M. GUZMAN, Justice.

We overrule appellee's motion for rehearing, withdraw our previous opinion, and issue this substitute opinion in its place.

In this insurance coverage dispute, the insurer filed suit seeking a declaration that it had no duty to reimburse its insured and two other carriers for the costs they incurred in settling a personal injury suit. The insurer moved for traditional summary judgment on the grounds that the insured (1) did not notify the insurer of the suit until less than a month before trial, (2) settled the suit without the insurer's consent, and (3) failed to cooperate with the insurer. Because the insurer produced no evidence that the actions of its insured or the settling carriers prejudiced the insurer and no evidence that the insured failed to cooperate, we reverse the trial court's summary judgment on these issues and remand the case for further proceedings consistent with this opinion.

### I. FACTUAL AND PROCEDURAL HISTORY

Weaver Industrial Service, Inc. ("Weaver") entered into a "Service Contract" with Coastal Refining & Marketing, Inc.

("Coastal"). The Service Contract required Weaver to supply labor, supervision, and equipment for maintenance and repairs to Coastal's refinery equipment and property. The Service Contract also required Weaver to designate Coastal as an additional insured on insurance policies providing coverage for all claims arising out of Weaver's work. Coastal required these policies to be primary to all other valid available insurance. Weaver added Coastal to its United States Fidelity and Guaranty Company ("USF&G") commercial general liability and umbrella policies. These policies are occurrence-based, as opposed to claims-made policies, and provide coverage for property damage and bodily injury.

On May 13, 1999, Weaver's employee, Rolando Lopez, was one of several people injured in an explosion at Coastal. Lopez and his wife sued Coastal and its parent company, Coastal Corporation, in Nueces County, Texas for negligence and gross negligence (the "*Lopez* suit").

Without notifying USF&G of the suit, Coastal retained the firm of Barger, Hermansen, McKibben & Villarreal, L.L.P.[1] as defense counsel. On May 13, 2000, the *Lopez* suit failed to settle at a court-ordered mediation during which the plaintiffs demanded $19 million. After the mediation, Coastal tendered its $500,000 self-insured retention, $500,000 from a fronting policy, and $1 million from Coastal Offshore Insurance Limited ("COIL"), Coastal's captive insurance company, to its excess insurer, Lexington Insurance Company ("Lexington"). Lexington assumed the defense of the case through the same counsel, and settlement negotiations continued.

On or about June 15, 2000, Coastal's defense attorneys wrote to Weaver and Whitney Vaky Insurance Agency, the agent and producer of the USF&G policies, and made a "demand for insurance coverage" as an additional insured under the USF&G policies. The demand letter included copies of the latest petition in the *Lopez* suit, the Service Contract between Weaver and Coastal, and the certificate of liability insurance showing Coastal as an additional insured on the USF&G policies. The letter informed Weaver and the agency that a mediation was scheduled for June 17, 2000, and requested "the presence of the appropriate representatives at the mediation." Weaver's notice was sent in accordance with a provision in the Service Contract requiring all notices concerning liability or indemnity to be sent to Weaver at a specified fax number. The record does not show the date Weaver received the notice, but the parties agree that the notice was forwarded to USF&G (presumably by Weaver or Whitney Vaky) by June 19 or 20, 2000.[2]

USF&G did not respond to the letter until five days after the referenced mediation and at least three days after receiving the demand. On June 23, 2000, USF&G senior claim specialist Mitchell Harless telephoned Coastal's attorneys and learned that the *Lopez* plaintiffs had demanded $8.5 million at the second mediation, and Lexington had offered $6 million to settle the case. USF&G also learned that trial was set for July 10, 2000, and that settlement negotiations were continuing. In a letter to Coastal's attorneys on June 23, 2000, Harless reserved USF&G's right to disclaim coverage due to late notice and to contest Coastal's status as an additional

---

1. The firm has since changed its name to Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.

2. Regardless of the date on which USF&G received a copy of the notice, the record demonstrates that notice was sent in accordance with the Service Contract before the second mediation.

insured on the basis that Lopez's injuries did not arise out of Weaver's work for Coastal. USF&G also requested "copies of all reports generated by persons who have investigated this accident ... [and] reports and information concerning the injury and damages sustained by Mr. Lopez."

On June 29, 2000, USF&G informed Coastal's attorneys that USF&G "had insufficient information about liability or damages to respond to the June 15 demand letter," and arranged to visit the offices of Coastal's attorneys on July 5, 2000 to review the litigation files in the *Lopez* suit. USF&G was aware that settlement negotiations were continuing at that time.

Using funds supplied by Coastal, COIL, and Lexington, Coastal's defense attorneys settled the *Lopez* suit for $7 million on June 30, 2000. After learning of the settlement, USF&G filed suit against Coastal seeking a declaration that USF&G had no duty to indemnify Coastal for cost of settlement. COIL and Lexington intervened in the suit. The court granted USF&G's motion for traditional summary judgment without stating the grounds for its decision, and Coastal, Lexington, and COIL appeal.[3]

## II. ISSUE PRESENTED

The sole issue presented for our review is whether the trial court erred in granting

3. Approximately two months after the hearing on the motion for summary judgment, but before the trial court rendered its decision, the appellants filed their Second Amended Counterclaim, adding allegations that USF&G violated article 21.21, section 4(10) of the Texas Insurance Code. Upon review of the record, we find no indication that appellants sought or obtained leave to file this amended pleading. Although the trial court granted leave "for all amended or supplement[al] summary judgment motions and/or briefs to be considered timely filed and served," the parties have cited no evidence that the trial court considered the amended pleadings. Moreover, the trial court later clarified that the summary judgment was interlocutory, and stated its intent "to address Plaintiff's claims for attorneys' fees and Defendants' claims related to its counterclaim, *if any remain in light of the June 25* [Summary Judgment] *Order.*" (The italicized portion is a handwritten addition). On June 2, 2004, the trial court granted final judgment, and although appellants' counterclaims under article 21.21 are not mentioned, the order states, "This Order disposes of all remaining issues and parties, and is appealable." We conclude from this chronology that the trial court disposed of appellants' article 21.21 counterclaims in its order of June 2, 2004, although USF&G never moved for summary judgment on these issues. However, appellants did not argue in their original brief that the summary judgment was overly broad or that the trial

court granted summary judgment on any ground not presented in the motion. *Cf. Hendrix v. Port Terminal R.R. Ass'n*, 196 S.W.3d 188, 201–02 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

In its response brief, USF&G pointed out that appellants waived any argument that summary judgment on their article 21.21 counterclaims was improper. Approximately six months after filing their original brief and one month after filing their reply brief, appellants moved for leave to file a supplemental brief addressing their article 21.21 counterclaims. We denied the motion. *See Rueda v. Paschal*, 178 S.W.3d 107, 111 n. 2 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (refusing to consider a supplemental brief filed three and one-half months after appellant's original brief); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, pet. denied) ("The rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised by appellant's original brief."). Thus, appellants' counterclaims under article 21.21 of the Texas Insurance Code are not before this court on appeal. Our discussion of the motion for summary judgment therefore pertains only to the three grounds stated above, each of which was expressly raised in USF&G's motion for summary judgment and timely briefed on appeal.

USF&G's motion for summary judgment. Appellants Coastal, COIL, and Lexington argue that the motion was improperly granted because USF&G failed to meet its evidentiary burden to establish that it was prejudiced by the late notice or settlement of the *Lopez* suit, or by Coastal's alleged failure to cooperate. Appellants additionally argue that any breach of the policy's prompt notice of suit, voluntary payment, or cooperation clauses is immaterial, and does not discharge USF&G's duty to indemnify Coastal and the settling carriers for the costs of settlement. We agree.

### III. STANDARD OF REVIEW

We examine the summary judgment evidence applying familiar standards of review. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). A summary judgment movant must establish its right to summary judgment by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004). Under Texas Rule of Civil Procedure 166a(c), a party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* We will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Id.*

### IV. ANALYSIS

#### A. LATE NOTICE

In its motion for summary judgment, USF&G primarily argued that Coastal un-justifiably delayed notifying USF&G of the *Lopez* suit, but it has not reurged this argument on appeal. Instead, USF&G argues that the policy's notice provision is a condition precedent to coverage, and thus, Coastal was required to comply in order to invoke coverage. Because Coastal failed to promptly notify USF&G of the *Lopez* suit, USF&G contends it is not required to show that the delay of notice prejudiced it. In the alternative, USF&G argues that the delayed notice prejudiced it as a matter of law.

#### 1. The Policy Requires USF&G to Show Prejudice from Late Notice.

■ USF&G's first argument is contrary to the plain language of the policy, which expressly continues coverage unless the insured's failure to promptly notify USF&G of the claim prejudices the insurer:

> With regard to Bodily Injury and Property Damage Liability, *unless we are prejudiced* by the insured's or your failure to comply with the requirement, any provision of this Coverage part requiring you or any insured to give notice of "occurrence," claim or "suit," or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will not bar coverage under this Coverage Part.

(emphasis added).

■ Courts must enforce such unambiguous policy language. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006). We therefore reject USF&G's argument that delayed notice necessarily voids coverage.

But in rejecting this argument, we note that compliance with a notice provision in an insurance policy has often been charac-

terized as a condition precedent to coverage. *See, e.g., Struna v. Concord Ins. Servs., Inc.,* 11 S.W.3d 355, 359 (Tex.App.-Houston [1st Dist.] 2000, no pet.). And as USF&G correctly points out, the Texas Supreme Court has previously stated that if an insured breached a condition precedent regarding notice, then "liability on the claim was discharged, and harm (or lack of it) resulting from the breach was immaterial." *Members Mut. Ins. Co. v. Cutaia,* 476 S.W.2d 278, 279 (Tex.1972).

More recently, however, the significance of characterizing a notice provision as a condition precedent to coverage has eroded considerably. *See* LEE R. RUSS & THOMAS F. SEGALLA, 13 COUCH ON INSURANCE 3D § 193:25 (2005); *see also* RESTATEMENT (SECOND) OF CONTRACTS: EXCUSE OF A CONDITION TO AVOID FORFEITURE § 229 (1981) (noting that, to the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange). With respect to coverage for bodily injury and property damage, the State Board of Insurance has issued the following amendatory endorsement applicable to all general liability policies, which essentially eliminates an insurer's ability to treat a notice requirement as a condition precedent to such coverage:

As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under the policy.

State Bd. of Ins., *Revision of Texas Standard Provision for General Liability Policies–Amendatory Endorsement–Notice,* Order No. 23080 (March 13, 1973) ("Board Order").

The Board Order significantly changed the law. Before it was issued, courts construed notice provisions in insurance policies in accordance with general contract law. Thus, an insured's failure to provide prompt notice of suit constituted failure of a condition precedent and excused the insurer's performance. *Cutaia,* 476 S.W.2d at 279–80. After the Board Order, characterization of a notice provision as a condition precedent has become less significant in policies to which the Order applies.[4] Although Texas courts may continue to characterize notice-of-suit provisions as conditions precedent to coverage, this characterization does not necessarily excuse the insurer's performance or result in forfeiture of coverage. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173–74 (Tex.1995) (characterizing compliance with a notice-of-suit provision as a condition precedent to the insurer's liability on an automobile liability insurance policy, but noting that "[t]he insured's failure

---

**4.** The policy at issue is an occurrence-based, commercial general liability policy providing coverage for property damage and bodily injury, and our opinion is restricted to such coverage. *Cf. Hirsch v. Tex. Lawyers' Ins. Exch.,* 808 S.W.2d 561, 565 (Tex.App.-El Paso 1991, writ denied) ("To require a showing of prejudice for late notice would defeat the purpose of **'claims-made'** policies, and in effect, change such a policy into an **'occurrence'** policy."); *PAJ, Inc. v. Hanover Ins. Co.,* 170 S.W.3d 258, 263 (Tex.App.-Dallas 2005, pet. granted) (treating a notice provision as a classic condition precedent when the claim at issue was one of advertising injury rather than bodily injury or property damage).

to notify the insurer of a suit against her does not relieve the insurer from liability for the underlying judgment unless the lack of notice prejudices the insurer."); *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex.1993) (per curiam) ("Although notice, the condition precedent to the policy, was not given according to the policy, [the insurer] does not escape liability, unless it was 'prejudiced' because of the lack of notice."); *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 611 (Tex.App.-Dallas 2006, no pet.) (noting that compliance with a notice provision is a condition precedent to coverage, but failure to comply with the provision "does not absolve the insurer from the underlying judgment unless the lack of notice prejudices the insurer.").

### 2. Late Notice No Longer Bars Coverage of Bodily Injury or Property Claims Absent Prejudice to the Insurer.

Although our shift away from interpreting a notice provision as a classic condition precedent can be attributed to the Board Order, we note that other jurisdictions have also moved away from this interpretation. Generally, other states construing similar notice provisions analyze their breach in one of four ways:

1. Unexcused or unreasonably late notice voids coverage without any showing of prejudice (i.e., the classic view of prompt notice as a condition precedent to coverage);

2. Unreasonable delay results in a rebuttable presumption that the insurer has been prejudiced;

3. Late notice voids coverage only if the insurer establishes that the late notice was a breach of contract that prejudiced the insurer's position; or

4. If the policy does not make timely notice a condition precedent to recovery and does not provide a specific penalty for failure to give notice of the claim or failure to forward suit papers, the insurer remains liable unless the delay prejudiced the insurer.

*See* RUSS & SEGALLA, *supra*, § 193:3 and authorities cited therein.

■ Although Texas law at the time of the Board Order followed the classic view of prompt notice as a condition precedent to coverage,[5] the law has not remained static in the intervening years. When coverage for bodily injury or property damage is at issue, Texas law now follows the approach that late notice voids coverage only if the insurer establishes that the delay prejudiced the insurer's position.[6]

---

5. *See Dairyland County Mut. Ins. Co. of Tex. v. Roman*, 498 S.W.2d 154, 157 (Tex.1973) (holding that the requirement that the insured give notice of an accident to the insurer as soon as practicable is a condition precedent to coverage, and in the absence of waiver or other special circumstances, failure to comply with this condition constitutes an absolute defense to liability under the policy "even though the insurer had actual notice of the accident and was not prejudiced by the lack of formal written notice from the insured.").

6. The extent to which this approach applies to coverage for personal or advertising injury rather than bodily injury and property damage is unsettled. *Compare PAJ, Inc.*, 170

S.W.3d at 262 (applying the *Cutaia* analysis in a personal and advertising injury case and holding that timely notice of suit is a condition precedent to coverage; failure of that condition therefore barred recovery under the policy even though the parties stipulated that the insurer was not prejudiced by the insured's delay in notifying the insurer of the copyright infringement suit), *with St. Paul Guardian Ins. v. Centrum G.S. Ltd.*, 383 F.Supp.2d 891, 900–01 (N.D.Tex.2003) (holding that insurance companies must show prejudice from late notice before coverage for bodily injury under an occurrence-based comprehensive general liability policy will be barred).

As a result, the failure to provide prompt notice in such cases now may be analyzed in the manner of a breach of contract that is not material unless it prejudices the insurer. *See Cruz*, 883 S.W.2d at 165 (construing an endorsement virtually identical to the provision at issue in this case and stating, "Although notice, the condition precedent to the policy, was not given according to the policy, [the insurer] does not escape liability, unless it was 'prejudiced' because of the lack of notice."). Specifically, an insurer is now required to show that it has been prejudiced by the insured's failure to give the insurer notice of a property or bodily injury claim. *See Harwell*, 896 S.W.2d at 174; *Cruz*, 883 S.W.2d at 165; *Struna*, 11 S.W.3d at 359.

### 3. To Bar Coverage of Bodily Injury and Property Claims, Actual Prejudice is Required.

■ Whether an insurer is prejudiced by delayed notice is generally a question of fact. *Struna*, 11 S.W.3d at 359–60; *see also P.G. Bell Co. v. United States Fid. & Guar. Co.*, 853 S.W.2d 187 (Tex.App.-Corpus Christi 1993, no writ) (reversing summary judgment in favor of insurer where fact question remained as to whether insurer was prejudiced by default judgment when insurer had actual notice of suit). In determining whether an insurer has been prejudiced, however, the existing case law offers limited guidance.

■ Entry of a default judgment will ordinarily constitute prejudice as a matter of law.[7] *See, e.g., Cruz*, 883 S.W.2d at 165 (holding that delay until after default judgment is final, when insurer does not otherwise have actual knowledge of suit, prejudices insurer as matter of law); *Ratcliff v. Nat'l County Mut. Fire Ins. Co.*, 735 S.W.2d 955 (Tex.App.-Dallas 1987, writ dism'd w.o.j) (determining that an insurer was prejudiced as a matter of law where its insured provided no notice of suit until default judgment became unappealable); *cf. Allstate Ins. Co. v. Pare*, 688 S.W.2d 680 (Tex.App.-Beaumont 1985, writ ref'd n.r.e.) (stating that an insurer was not prejudiced by insured's failure to forward suit papers prior to default when the insurer actually knew suit had been filed and knew that default judgment had been rendered against another defendant). Some authorities suggest that default judgment is the only circumstance constituting prejudice. *See P.G. Bell Co.*, 853 S.W.2d at 191 (presuming that the insurer was not prejudiced by late notice unless notice was given after a default judgment); 46 TEX. JUR.3D *Insurance Contracts and Coverage* § 944 (1995) ("[G]enerally, an insured's failure to notify the insurance company of a claim filed against it by a third party will not constitute prejudice unless that notice is given after a default judgment is taken against the insured."). Although we do not foreclose the possibility that an insurer could be prejudiced by events other than default judgment,[8] a close look at the rea-

---

7. *But see Gibbons–Markey v. Tex. Med. Liab. Trust*, 163 Fed. App'x 342, 344–46 (5th Cir. 2006) (holding that an insurer was not prejudiced by the insured's delay of five months in notifying the insurer of the suit where the insured was not properly served and was therefore unaware of the suit until the deadlines for filing a motion for new trial and an ordinary appeal had passed); *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 867 (Tex.App.-Corpus Christi 1998, pet. denied) (recognizing a defense to violation of prompt

notice provisions where the insured did not know of the proceedings against him until entry of default judgment).

8. *See, e.g., Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844 (Tex.App.-Corpus Christi 1991, writ denied) (sustaining jury's finding of prejudice when the insurer was not notified of the covered occurrence until trial was imminent; the insured could not be located; the insurer "was put in the posture of having to defend [the insured] without the benefit of having its

sons default judgment is prejudicial offers some guidance in determining when prejudice occurs.

In *Kimble v. Aetna Casualty and Surety Co.*, the insurer learned of the suit after a default judgment was entered, but before the judgment became final. 767 S.W.2d 846, 850–51 (Tex.App.-Amarillo 1989, writ denied). The insured argued that the insurer was not prejudiced because it learned of the suit in time to move for a new trial. *Id.* In rejecting that argument, the Seventh Court of Appeals explained the particular consequences of the default judgment that rendered it prejudicial:

> In contrast, then, to a trial on the merits where a defendant may expect that a plaintiff must establish its claims by a preponderance of the evidence, the burden is upon the movant for a new trial to meet a fairly rigorous standard before such a movant is entitled to a new trial. It seems clear that [the insurer], by virtue of the default judgment, has been substantially prejudiced by that change in position. Moreover, under the facts of this case, it is by no means certain that appellee, standing in the shoes of its insured, could have established its entitlement to a new trial. If it was unable to have the default judgment set aside, the prejudice suffered by appellee is obvious.

*Id.* at 851.

As *Kimble* illustrates, it is not the fact of a change in position, but the substance of the change that generally renders a default judgment prejudicial. Before default judgment, an insurer can escape liability for a covered claim if the plaintiff fails to meet its burden of proof. After a default judgment, however, an insurer can no longer defend against the underlying claim unless it first meets a new burden of proof on new issues [9] when its ability to meet that burden may be in doubt. As a result, a default judgment usually causes actual prejudice to an insurer, while the cure for that prejudice exists only in theory. The "potential" cure does not outweigh the "actual" prejudice.

Although *Kimble* and its progeny do not stand for the proposition that *only* a default judgment prejudices an insurer, such cases illustrate the requirement that an insurer must demonstrate a material change in position to establish prejudice. Courts finding prejudice have done so based on evidence of prejudice actually sustained, not on merely speculative or potential prejudice.

This approach is consistent with the cases from those states that follow an approach similar to that of Texas: the insured's breach of a notice provision is material when the insurer has sustained "actual" prejudice. The requirement of "actual prejudice" means that the insurer may not disclaim coverage on the basis of prejudice that is only theoretical or presumed merely from the length of delay. *See, e.g., Gen. Acc. Ins. Co. v. Scott*, 107 Md.App. 603, 669 A.2d 773 (1996) (holding that an insurer who receives notice before trial cannot rely on delayed notice alone

---

insured assist in its defense by disclosing facts, names of witnesses, and otherwise assisting in case preparation"; and therefore was compelled to accept the facts presented by the injured third-party claimant).

9. An insurer would now have to show (1) its insured's failure to answer or appear was not intentional or the result of conscious indifference but was instead the result of accident or mistake, (2) the insured has a meritorious defense, and (3) granting a motion for new trial would not cause any delay or injury to the third-party claimant. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939).

to show prejudice); *Wilson v. Progressive N. Ins. Co.*, 151 N.H. 782, 868 A.2d 268 (2005) (noting that, although the insurer need not show actual loss of evidence to demonstrate prejudice from insured's delay in providing notice, it must at the very least provide the court with facts showing prejudice and not merely surmise that it may be prejudiced because certain events may have occurred in the abstract during the period of delay); *Canron, Inc. v. Fed. Ins. Co.*, 82 Wash. App. 480, 918 P.2d 937 (1996) (determining that evidence that a liability insurer's ability to investigate underlying environmental contamination claim against its insured was compromised by insured's delayed notice of claim, standing alone, is insufficient to support jury's conclusion that insurer had suffered the actual prejudice necessary to deny coverage based on the delayed notice; what is lost or changed must be material and not otherwise available or subject to reasonable reconstruction).

Texas cases regarding late notice similarly have been decided based on actual prejudice. *See, e.g., Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844 (Tex.App.-Corpus Christi 1991, writ denied); *cf. Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 695 (Tex.App.-Houston [14th Dist.] 2006, pet. filed) (sub. op. on reh'g) (holding that the insurer's "inability to parse its damages any finer than rough allocations for inspection and repair, and accompanying administrative and legal costs" as a result of the insured's settlement of claims without notice to or the consent of the insurer does not constitute prejudice as a

matter of law). In such cases, prejudice was not presumed, but demonstrated. *See, e.g., Blanton*, 185 S.W.3d at 612–13 (holding that the insurer was prejudiced by the insured landlord's delay of two and one-half years in providing notice of thirty complaints of a leaking roof because the delay prevented the insurer from protecting itself from further loss and resulted in health claims by the tenant and thousands of dollars in avoidable defense costs). Here, actual prejudice is also required by the policy's language.[10]

■ In accordance with this construction, we conclude that coverage for bodily injury or property damage remains in force after the insured's breach of a notice provision unless the insurer demonstrates that the breach caused the insurer actual prejudice.[11] *See Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 866 (Tex. App.-Corpus Christi 1998, pet. denied) (question of fact as to "whether insurers were *actually prejudiced* at the time they learned of default") (emphasis added). To hold otherwise would be contrary to the plain meaning of the endorsement described *supra*, and in effect, would transfer the burden to the insured to prove a negative: that conjectured but unproven prejudice has not and will not occur.

In reaching this conclusion, we do not add an additional element to the insurer's burden of proof or otherwise alter the present standard; rather, we clarify the meaning of the word "prejudice" as expressed in the unambiguous language of the policy and consistently applied in simi-

**10.** As previously discussed, the policy states that breach of a notice provision does not bar coverage "unless we are prejudiced" by the failure to comply. The unqualified use of the present tense "are" indicates current, actual prejudice, rather than speculative or potential prejudice.

**11.** The requirement that the insurer show "actual prejudice" is also consistent with the law governing settlements without consent, discussed *infra*.

lar Texas "late notice" cases over the last thirty years.

### 4. USF&G Failed to Prove Actual Prejudice.

■■■ As the movant for summary judgment, USF&G bore the burden to produce evidence of prejudice. See TEX. R. CIV. P. 166a(c). USF&G contends that Coastal's belated notice of suit prejudiced USF&G as a matter of law by depriving it of anticipated contractual benefits such as the right to investigate, defend, participate in, and control settlement negotiations. In support of this argument, USF&G relies on *Motiva Enterprises, LLC v. St. Paul Fire & Marine Insurance Company*, 445 F.3d 381 (5th Cir.2006).

The facts in *Motiva* are very different from those presented here. In *Motiva*, the insurer offered to defend its insured from a bodily injury claim; the proffered defense was subject to a reservation of rights. *Id.* at 383. The insured asked the insurer to send a representative with full settlement authority to a mediation but refused to provide documents related to the case on the grounds that the insurer "never acknowledged coverage" for the claim. *Id.* The insurer's representative attended the mediation but was asked to leave.[12] *Id.* The mediation continued without the insurer's representative, concluding in a $16.5 million settlement. *Id.*

In analyzing these facts, the court first stated that Texas law is unclear regarding "whether an insurer must demonstrate prejudice before it can avoid its obligations under a policy where the insured breaches a prompt-notice provision...." *Id.* at 386. Here, no such ambiguity exists: the policy

requires the insurer to show prejudice from the breach. Thus, we can only speculate that the policy at issue in *Motiva* contained no similar provision.

The *Motiva* court then assumed that the insurer is required to show prejudice, and although it discussed prejudice caused by breach of a consent-to-settlement clause rather than a prompt-notice clause, the *Motiva* court identified the facts on which it concluded that the insurer was prejudiced:

> An insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement. When, as in this case, the *insurer is not consulted* about the settlement, *the settlement is not tendered* to it and the *insurer has no opportunity to participate in or consent to the ultimate settlement decision,* we conclude that the insurer is prejudiced as a matter of law.

*Id.* at 386–87 (emphasis added).[13]

Here, however, none of these facts are present. In *Motiva*, the insurer sought to fulfill its own contractual obligations to defend the insured and to participate in settlement negotiations, but was excluded from the mediation. In contrast, USF&G took no action to participate in ongoing settlement negotiations. In *Motiva*, the insurer was denied access to all documents related to the underlying claim, but here, as discussed *infra*, no evidence shows that Coastal and the settling insurers failed to cooperate with USF&G. Although the Fifth Circuit Court of Appeals questioned whether an insurer is required to show prejudice resulting from a violation of a

---

**12.** The opinion does not identify the person who made this request.

**13.** The court further held that "an insurer *which tenders a defense* with a reservation of rights is entitled to enforce a consent-to-settle

clause...." *Id.* at 385, 133 S.W.2d 124 (emphasis added). Although USF&G reserved its rights, there is no evidence that it tendered a defense.

consent-to-settle provision in order to avoid coverage, the court did not conclude, as USF&G suggests, that such a violation voids coverage as a matter of law regardless of prejudice. To the contrary, the court in *Motiva* reviewed the facts of the case to determine if prejudice had been established, and its narrow conclusion was based on widely different facts than those presented here.

Thus, even if we apply *Motiva's* reasoning that "[a]n insurer's right to participate in the settlement process is an essential prerequisite to its obligation to pay a settlement," we nevertheless conclude that USF&G's right to participate in settlement was not only preserved in this case, but was acknowledged and its exercise encouraged. On these facts, and given USF&G's status as the movant for summary judgment, we cannot infer prejudice that has not been shown to exist. *See* TEX.R. CIV. P. 166a(c).

■■■ USF&G similarly relies on *Clarendon National Insurance Co. v. FFE Transportation Services, Inc.*, 176 Fed. Appx. 559 (5th Cir.2006) (per curiam). In *Clarendon*, the policy at issue was subject to a $1 million self-insured retention ("SIR") that "functioned essentially as a deductible in that the insured, FFE, was responsible for the first $1 million in damages arising from an accident." *Id.* at 560. One of FFE's vehicles was involved in an accident resulting in several claims. *Id.* FFE settled all but one of the claims for a total of $219,861.99, and rejected an offer to settle the remaining claim for $700,000. *Id.* The claim was tried to a verdict of $1.1 million, reduced in a post-judgment settlement to $1 million. *Id.* Three months after the trial, FFE gave its first notice of suit to its insurer, Clarendon, and subsequently sued for reimbursement of amounts it paid in excess of its self-insured retention. *Id.* On appeal, Clarendon argued it had no duty to reimburse FFE if it could show (1) prejudice as a matter of law, i.e., presumed prejudice, or (2) actual prejudice.[14] *Id.* at 561.

Although *Clarendon* was decided only twenty days after *Motiva*, the Fifth Circuit stated that it "need not decide whether the presumed prejudice rule is still good law" because FFE's rejection of the settlement offer within the SIR limit resulted in actual prejudice. *Id.* Like *Motiva*, however, *Clarendon* is distinguishable on its facts. Unlike the present case, the insurer in *Clarendon* was not notified of the suit until several months after trial and therefore had no opportunity to accept the lower settlement offer. Here, USF&G was notified of the suit before trial and invited to participate in settlement discussions. Moreover, the insurer in *Clarendon* proved actual prejudice in that it lost the opportunity to settle the case for an amount within the insured's self-insured retention. Unlike the insurer in *Clarendon*, USF&G has not demonstrated that the plaintiffs in the underlying *Lopez* suit

---

14. If the abstract loss of the rights to investigate, defend, participate in, and control settlement negotiations were sufficient to show the necessary prejudice, then delaying notice to the primary insurer until after settlement would always result in forfeiture of coverage, because the settlement would necessarily foreclose the insurer's participation. But a review of the cases shows that Texas law does not presume prejudice merely from settlement without the insurer's consent. *See, e.g., Han-son Prod. Co. v. Ams. Ins. Co.*, 108 F.3d 627, 631 (5th Cir.1997) (noting "the modern trend in favor of requiring proof of prejudice"); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 191–92 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (holding that an insured's breach of a consent-to-settlement provision did not discharge the liability insurer's obligations unless the insurer was actually prejudiced or deprived of a valid defense).

ever offered to settle the case for a lower amount.

USF&G also failed to establish that, as a matter of law, the delay in notice prevented its investigation of the *Lopez* claims. For example, USF&G's representative Mitchell Harless arranged to review the litigation file of the attorneys retained by Lexington to represent Coastal; however, he scheduled this appointment for a date more than two weeks after receiving notice of the suit, and just five days before the trial setting:

> Q: Okay. Why did you wait to schedule a trip down to Corpus until July 5th?
>
> A: No particular reason. I mean, that just seemed to be the date we agreed on.
>
> Q: That would have been five days before the scheduled trial?
>
> A: If you're telling me—if you're telling me that it's five days, then that's right.
>
> Q: Okay. Did you believe five days would have given you enough time to have made your investigation?
>
> A: I'm not sure.
>
> Q: Did [USF&G] have any limitation on your ability to travel from Houston to Corpus Christi?
>
> A: No.
>
> Q: Is there some reason that you didn't call a lawyer down in Corpus Christi, someone from Bren & Bren or Royston & Rayzor to go over and look at the Barger firm file?
>
> A: No.
>
> Q: Did you have the ability to do that?
>
> A: Yes.

Harless attended the scheduled meeting, and USF&G produced no evidence that

the investigation and litigation by Coastal's attorneys was deficient, or that its own investigation was otherwise impaired by the delayed notice. USF&G also failed to establish that, as a matter of law, Coastal's delayed notification prevented USF&G from defending the suit or controlling settlement negotiations after notice was received. Unlike the circumstances in the cases on which USF&G relies, it learned of the suit while the defense and negotiations were still ongoing, and under the terms of the policy, USF&G had the right to assume control of both.

As the movant for summary judgment, USF&G bore the burden to show its entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). But USF&G produced no evidence that the late notice prejudiced it by preventing it from investigating the suit or immediately assuming control of the negotiations and defense, as offered by Coastal's attorneys. Therefore, we conclude the summary judgment cannot be sustained on the basis of late notice.

## B. VOLUNTARY PAYMENT

■■■ USF&G moved for summary judgment on the additional ground that appellants are not entitled to repayment of any part of the $7 million *Lopez* settlement because they voluntarily settled the case without USF&G's consent. Specifically, the USF&G policies at issue state, "No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." [15] Coastal, COIL, and Lexington argue on appeal that USF&G's summary judgment cannot be sustained on this basis because USF&G failed to show the settlement pay-

---

**15.** This language is taken from USF&G's commercial general liability policy, and the language in its umbrella policy is virtually identical.

ments were voluntary and prejudicial. We agree.

### 1. USF&G Failed to Establish that Payment was Voluntary.

 As a threshold matter, USF&G did not establish that appellants paid the settlement voluntarily. Although USF&G asserts in its motion for summary judgment that Coastal voluntarily paid the settlement, the evidence it offers in support of this argument shows only that Lexington, through its agent AIG Technical Services, offered to settle the case for $7 million on June 29, 2000, and the offer was subsequently accepted. But a settlement offer by Lexington is not necessarily the same thing as a voluntary payment by Coastal. "An insurer who pays a third-party claim against its insured is not a volunteer if the payment is made in good faith and under a reasonable belief that the payment is necessary to its protection." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 20 S.W.3d 692, 702 (Tex.2000) (citing *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 447 (5th Cir.1991)). Moreover, an excess insurer's payment to settle a suit against the insured is presumptively involuntary for subrogation purposes. *Id.* (citing *Argonaut Ins. Co. v. Allstate Ins. Co.,* 869 S.W.2d 537, 543 (Tex. App.-Corpus Christi 1993, writ denied)). USF&G has never asserted or offered evidence that COIL or Lexington funded all or part of the settlement without good faith or a reasonable belief that payment was necessary for their own protection.[16]

In its motion for rehearing, USF&G relies on two additional cases that do not affect our analysis. First, USF&G cites *Westchester Fire Insurance Co. v. Admiral Insurance Co.* for the proposition that "the issue of voluntariness is relevant only to a party's *standing* to bring a cause of action as a subrogee .... [and] has no relevance to the proof required for the party to actually recover on its cause of action." 152 S.W.3d 172, 179 (Tex.App.-Fort Worth 2004, pet. filed). But the issue in *Westchester* was whether the primary insurer breached its duty to settle a covered claim; the question of whether an excess carrier's settlement was voluntary under a policy provision such as that presented here was not at issue. Moreover, as the movant for summary judgment, USF&G bore the burden to establish that reimbursement of the settlement payment was barred by the "voluntary payment" provision of the policy. *Westchester* provides no guidance on this issue.[17]

 USF&G also relies on *The Kroger Co. v. Champion Maintenance Specialists, Inc.,* No. 14–098–00344–CV, 1999 WL 418380, at *3 (Tex.App.-Houston [14th Dist.] June 24, 1999, no pet.) (not designated for publication). In *Kroger,* we held that an insured who failed to notify its insurer of a lawsuit but instead voluntarily assumed its own defense without the insurer's consent and in violation of a voluntary payment provision was precluded from recovering its pre-notice attorneys' fees and litigation expenses. This holding is consis-

---

16. USF&G does not contend that Coastal funded the entire settlement, and has never contended that the portion of the settlement consisting of Coastal's self-insured retention should be treated differently than payments by Coastal's insurers.

17. In *Westchester,* the Second Court of Appeals held that an excess carrier who makes

an involuntary settlement on behalf of its insured has standing to sue the primary carrier for reimbursement as the insured's equitable subrogee, but must still prove the validity of the reimbursement claim. *Id.* at 179. The court did not address the voluntariness of the settlement itself.

tent with the well-established proposition that an insured generally is not entitled to reimbursement of the defense costs it voluntarily incurred before notifying the insurer of the suit. Because an insurer's duty to defend is triggered by notice, the insurer has no duty to reimburse the insured for defense costs incurred before the insured gave the insurer notice of the lawsuit. *E & L Chipping Co., Inc. v. Hanover Ins. Co.,* 962 S.W.2d 272, 278 (Tex.App.-Beaumont 1998, no pet.). Here, however, the issues before us are limited to those presented in USF&G's motion for summary judgment and presented on appeal. *See* TEX. R. APP. P. 33.1(a), 38.1(h). USF&G's motion for summary judgment addressed only its duty to indemnify appellants for the funds they expended in settlement *after* notifying USF&G of the lawsuit and tendering Coastal's defense, and not for pre-notice defense costs. *Kroger* offers no guidance on this issue.

### 2. USF&G Failed to Demonstrate Prejudice.

■■ There is a second reason that USF&G's summary judgment cannot be affirmed on the basis that the voluntary payment clause bars appellants from reimbursement: USF&G failed to establish that the settlement caused prejudice.

All parties acknowledge that *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994), requires an insurer to demonstrate that the insured prejudiced the insurer by settling the underlying liability case without its consent before coverage will be denied; however, the parties disagree regarding the application of *Hernandez.*

In *Hernandez,* the insured acted without the consent of its UM/UIM carrier in settling a case with the underinsured motorist who caused an auto accident. The carrier argued that the insured's conduct violated the following policy language:

This insurance does not apply:

a) to bodily injury or property damage with respect to which the insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor[.]

*Id.* at 692, n. 1. Although the *Hernandez* insured's settlement breached this provision, the Texas Supreme Court noted that (1) only a material breach voids coverage, and (2) a breach that was not prejudicial was not material. *Id.* at 693. The Court then analyzed the materiality of the breach to determine if it deprived the insurer of an anticipated benefit from the insurance contract. Within the context of an underinsured motorist claim, the insurer's anticipated benefit from the insurance contract was "a valuable subrogation right." *Id.* at 692. Although the insured's settlement extinguished the subrogation right, the Court determined that the breach was not prejudicial—and therefore, not material—because the underinsured motorist was judgment-proof, and thus, the subrogation right had no monetary value. *Id.* at 693–94.

USF&G argues that both the holding and the reasoning of *Hernandez* are limited to uninsured motorist claims. We disagree. *Hernandez* was expressly based on the fundamental principle of contract law that a material breach by one contracting party excuses performance by the other party, and an immaterial breach does not. *Id.* ("Insurance policies are contracts, and as such are subject to rules applicable to contracts generally. A fundamental principle of contract law dictates that when a party to a contract commits a material breach of that contract, the other party is

discharged or excused from any obligation to perform.") (citations omitted).

This principle is not limited to uninsured motorist policies. *See, e.g., Ins. Co. of N. Am. v. McCarthy Bros. Co.,* 123 F.Supp.2d 373 (S.D.Tex.2000) (holding that, when a general contractor settled a construction defects claim against it before notifying its insurers of the suit, the court must demand that the insurer establish prejudice in order to enforce a "consent to settle" condition precedent); *Lennar Corp.,* 200 S.W.3d at 690 (determining that, absent prejudice, commercial general liability insurer cannot avoid coverage for insured's settlement of property damage claims prior to notice of suit). We therefore follow the same reasoning, and determine whether USF&G has shown that the settlement payment was prejudicial.

USF&G submitted no evidence of prejudice from the settlement but argues that if it is required to show prejudice, the settlement of the *Lopez* suit prejudiced it as a matter of law. USF&G claims that by settling the case, appellants deprived USF&G of the opportunity to participate in the defense and settlement processes, and placed USF&G in the same posture as one who is presented with a final, appealable judgment and told to pay it.

In support of this argument, USF&G relies upon *West Bend Co. v. Chiaphua Industries, Inc.,* 112 F.Supp.2d 816 (E.D.Wis.2000), *aff'd,* 11 Fed.Appx. 616 (7th Cir.2001) (applying Wisconsin law). In *West Bend,* the appellant asked the federal district court to predict whether Wisconsin state courts would hold that insurance coverage remains in effect when the insured breaches a voluntary payment clause without prejudicing the insurer. *Id.* at 824–25. The court avoided answering that question by holding that the insurer suffered preju-

dice as a matter of law because the insured did not report the existence of the liability suit until it had settled the suit after minimal investigation or defense. *Id.* at 825.

The facts of *West Bend* are readily distinguished from the present case. Here, USF&G was aware of the lawsuit and of the continuing negotiations before the settlement. Unlike the insurer in *West Bend,* USF&G was actually invited to send representatives to a mediation. Although it is uncertain whether USF&G knew of the mediation in time to attend, USF&G was aware that at the close of the mediation, appellants had already offered more than seventy percent of the plaintiffs' current demand. USF&G was also aware that negotiations were continuing, and that the offer and the demand were closer than they ever had been. USF&G therefore had opportunities that the insurer in *West Bend* lacked. For example, USF&G could have asked the parties to continue or abate the suit to allow coverage to be determined, or it could have required Coastal to terminate settlement negotiations. Thus, unlike the *West Bend* insurer, USF&G not only had the option to participate in settlement negotiations, but could have assumed control of the entire defense subject to a reservation of rights.[18]

Moreover, appellants presented evidence that the settlement did not prejudice USF&G. Walter Zimmerman, an adjuster with more than forty-years experience, offered his expert opinion that the settlement paid to resolve the *Lopez* claims was "more than reasonable." Appellants also presented evidence indicating how a jury in the same venue would value the *Lopez* claims. Three other plaintiffs sued Coastal's parent company, Coastal Corporation, in a separate suit for burns resulting from

---

**18.** In addition, the insurer in *West Bend* presented evidence that its insured's investiga-

tion and defense of the claim was deficient. No similar evidence was presented here.

the same explosion. *Coastal Corp. v. Torres,* 133 S.W.3d 776, 777 (Tex.App.-Corpus Christi 2004, pet. denied.). A jury awarded them $122.5 million. *Id.* at 777–78. On appeal, the judgment was reversed on the grounds that Texas does not recognize a cause of action against a parent company for negligent control of the subsidiary's budget. *Id.* at 779. The subsidiary in the *Torres* case was Coastal, and although it was not a party in *Torres,* Coastal's liability was at issue in the *Lopez* suit. Thus, the *Torres* case offers some insight as to the value of the *Lopez* claims.

 USF&G does not contend that the claims were settled for an unreasonable amount, but instead argues that prejudice need not be monetary. We agree. But USF&G produced no evidence of prejudice, monetary or otherwise. It speculates that it might have settled the case for less money, but there is no indication that USF&G intended to offer any settlement funds at all. There is also no evidence that the *Lopez* plaintiffs would have accepted a lesser offer, particularly as they had recently rejected an offer that differed by less than fifteen percent from the final settlement figure accepted.[19] Thus, the only evidence pertaining to prejudice from the settlement is appellants' evidence that the settlement was reasonable, and that a jury in Corpus Christi, Texas likely would award the *Lopez* plaintiffs more than $7 million.

In its motion for rehearing, USF&G argues that:

> None of the default judgment cases ... inquire into the reasonableness of the *amount* of the default judgment, or whether the carrier could have produced an outcome monetarily different from

the amount assessed by default. Likewise, none of the defense cost cases decided under 'voluntary payments' clauses required proof the insurer could have defended the case more cheaply.

However, both the "default judgment" and "pre-notice defense costs" lines of cases pertain to claims for reimbursement for financial obligations incurred before the insurer was notified of the lawsuit. In addition, both these lines of cases concern prejudice resulting from the insured's failure to provide prompt notice of a lawsuit. As previously discussed, the standard for determining if the insurer has been prejudiced by late notice is whether the insured has suffered an adverse change in position due to the delay. *See Kimble,* 767 S.W.2d at 850–51; *see also Gibbons–Markey v. Tex. Med. Liab. Trust,* 163 Fed. Appx. 342, 344 (5th Cir.2006) ("Accordingly, the dispositive factor in determining whether an insurer has been prejudiced by a delay in tendering defense is not how much time elapses prior to tender, but what happens during that time" (citing LEE R. RUSS & THOMAS F. SEGALLA, 14 COUCH ON INSURANCE 3D § 199:139 (2006))). We do not purport to change that standard, nor do we imply that an insurer cannot be excused from the duty to indemnify its insured or the insured's subrogees for the costs of a settlement made without the insurer's consent if the only prejudice shown is non-monetary. Rather, we simply hold that, as the movant for summary judgment, USF&G bore the burden to establish that it had sustained prejudice—monetary or otherwise—from the settlement. Here, USF&G failed to meet that burden.

---

**19.** It is perhaps equally likely that the plaintiffs' demands would have increased proportionately as the number of participating insurers and policies increased, so that USF&G's participation would have made settlement more costly, assuming that the expense of trial could be avoided at all.

Given USF&G's failure to provide evidence of prejudice and appellants' evidence that the settlement was reasonable, summary judgment in favor of USF&G cannot be sustained on this basis.[20]

## C. LACK OF COOPERATION

 Finally, USF&G argues that appellants breached the policy's cooperation clause, which states, "You and any other involved insured must ... cooperate with us in the investigation, settlement or defense of the claim or 'suit.' " USF&G argues that appellants breached the duty to cooperate by (1) failing to notify it of the *Lopez* settlement and by requesting coverage for the settlement "after the fact [of settlement]," (2) failing to timely provide suit papers and provide notice of suit, and (3) initially failing to provide USF&G with documentation from the *Lopez* litigation file.

USF&G cites no authority for the proposition that requesting coverage evidences a lack of cooperation, nor do we find this to be the case. This argument instead restates the claim of late notice:

Q: Are you able to tell this jury how Coastal Refining failed to cooperate with USF&G?

A: [by Harless] To the extent that it's rolled into the late notice, that would be about the only thing that I could say.

But as previously discussed, USF&G has not demonstrated that late notice caused it to suffer prejudice.

The basis of USF&G's contention that Coastal initially failed to provide USF&G with documentation from the *Lopez* litigation is unclear, but is purportedly evidenced by the testimony of USF&G representative Mitchell Harless, such as the following:

Q: Putting aside for a moment the fact that you had asked for status reports while the lawsuit against the Coastal Corporation was continuing and there was some initial hesitation to give you that—

A: Right.

Q: —was there anything else that you ever asked for that you were refused?

A: Not to my recollection right now.

Q: Okay. And, subsequently, you were given copies of the status reports?

A: I know that we were provided with some information, but I really couldn't detail exactly what all that was.

. . .

A: I never had the occasion to visit with a Coastal rep who denied me information. My dealings were with [Coastal's counsel].

Q: Okay. Did you ever ask to sit down and talk with someone from Coastal Refining?

A: No.

Q: Was there anything that you ever asked for that Coastal Refining or Lexington said, "Absolutely not, no way; we will not provide that to you?"

A: Not that I recall.

Q: Okay.

A: Well, let me—let me back up. Initially that was told to me *after the case settled,* but they had some internal discussions. And apparently they resolved it to their satisfaction

---

**20.** As previously noted, there is also a question of fact regarding the voluntariness of the

payment.

that they would not be destroying the *attorney/client privilege with regards to the continuing litigation.* And then subsequent to them figuring that out, they sent me some information.

(emphasis added). The record does not clearly identify the specific documents that were requested, the date they were requested, from whom they were requested, the basis on which they were withheld, the extent to which they were produced, or the date of production. The only written request for records available for our consideration is contained in USF&G's letter of June 23, 2000, in which USF&G reserved its rights to deny coverage, and requested "copies of all reports generated by persons who have investigated this accident ... [and] reports and information concerning the injury and damages sustained by Mr. Lopez." Coastal's attorney Augustin Rivera offered uncontradicted testimony that during his June 23, 2000 conversation with Harless, Rivera said he "was available to meet with [Harless] at any time to provide him with whatever information he needed to get up to speed on where we were in the case." The record further shows that USF&G scheduled the meeting to take place on July 5, 2000, and that the meeting did take place on that date. USF&G provided no evidence that the materials it requested were not produced at the meeting. Because we take as true all evidence favorable to the nonmovant and resolve any doubts in the nonmovant's favor, we cannot conclude that Coastal failed to cooperate.

In addition, it was USF&G's burden to prove not only that Coastal failed to cooperate, but that this failure prejudiced USF&G. *See Struna,* 11 S.W.3d at 360 (stating it is the insurer's burden to prove that the insured's failure to cooperate prejudiced the insurer). USF&G has offered no evidence that this alleged lack of cooperation caused prejudice.

Because the summary judgment proof does not show that Coastal failed to cooperate and that any such failure prejudiced USF&G, the summary judgment cannot be supported on those grounds.

## V. CONCLUSION

Because there is no evidence that USF&G was actually prejudiced by Coastal's late notice, by the settlement of the *Lopez* case, or by Coastal's alleged lack of cooperation, USF&G is not entitled to summary judgment on any of the grounds presented to the trial court. Moreover, USF&G failed to establish as a matter of law that Coastal voluntarily paid the settlement or breached its duty to cooperate. Consequently, we reverse the judgment of the trial court concerning USF&G's duty to indemnify appellants for the costs of settlement, sever these claims from appellant's extra-contractual claims,[21] and remand the indemnification claims for further proceedings consistent with this opinion.