**MARYLAND CASUALTY COMPANY, Appellant**

v.

**AMERICAN HOME ASSURANCE COMPANY and Illinois National Insurance Company, as Subrogees of National Equipment Services, Inc., Appellees.**

No. 01–07–00711–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 29, 2009.

108

Hilaree Ann Casada, Veronica M. Bates, Hermes Sargent Bates, L.L.P., Dallas, TX, for Appellant.

James N. Isbell, Kevin F. Risley, Thompson, Coe, Cousins & Irons, LLP, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION ON REHEARING

TERRY JENNINGS, Justice.

We deny appellees' motion for rehearing. *See* Tex.R.App. P. 49.3. We withdraw our October 9, 2008 opinion, substitute this opinion in its place, and vacate our October 9, 2008 judgment.

Appellant, Maryland Casualty Company ("Maryland"), challenges the trial court's rendition of summary judgment in favor of appellees, American Home Assurance Company ("American") and Illinois National Insurance Company ("Illinois"), as subrogees of their insured National Equipment Services, Inc. ("NES"). The trial court concluded that American and Illinois are entitled to insurance coverage from Maryland because NES qualified as an additional insured under a commercial general liability insurance policy issued by Maryland. Maryland brings four issues for our review. In its first and second issues, Maryland contends that the trial court erred in denying its summary judgment motion and in rendering summary judgment in favor of American and Illinois as their subrogation claims "are barred as a matter of law" under *Mid–Continent Insurance Co. v. Liberty Mutual Insurance Co.*,[1] the pertinent indemnity clause did not establish that NES was an additional insured under Maryland's insurance policy and American and Illinois are not entitled to indemnity, and the evidence conclusively established that NES failed to comply with "the conditions precedent to coverage." In its third and fourth issues, Maryland contends that the trial court abused its discretion in denying Maryland's motion to reopen the summary judgment evidence and in awarding American and Illinois damages in excess of the limits of Maryland's policy.

We reverse and render.

## Factual and Procedural Background

On October 28, 2000, three Laser Construction ("Laser") workers were killed when a trench in which they were working caved in. The workers were in a "trench box" that NES had leased to Laser. The families of the deceased workers sued NES, among others, in Fort Bend County ("the *Vasquez* lawsuit"), but they did not sue Laser. NES then filed a third-party petition against Laser in the *Vasquez* lawsuit, in which it asserted that it was entitled to be indemnified by Laser based on the parties' equipment lease agreement for the trench box. However, pursuant to a Rule 11 agreement[2] between NES and Laser, Laser did not file an answer to the third-party petition, and NES agreed to refile its claim against Laser in a separate proceeding in Harris County. American, which provided "primary insurance" to NES, and Illinois, which provided a "commercial umbrella policy" to NES, ultimately settled the *Vasquez* lawsuit on behalf of NES. Pursuant to this settlement, American allegedly "incurred liability and expenses in excess of" $1,000,000 and Illinois allegedly "incurred liability in the amount of" $1,250,000.

After American and Illinois had settled the *Vasquez* lawsuit on NES's behalf, NES, in an October 17, 2002 letter, made its first demand upon Maryland for "insurance coverage." American and Illinois, as subrogees of NES, subsequently filed the instant lawsuit against Maryland, seeking

---

**1.** 236 S.W.3d 765 (Tex.2007).

**2.** Tex.R. Civ. P. 11.

insurance coverage [3] from Maryland for the settlement amounts and attorney's fees that they had expended in defending and settling the *Vasquez* lawsuit on NES's behalf.[4] American and Illinois sought proceeds from insurance coverage from Maryland's policy, asserting that NES qualified as an additional insured under Maryland's policy.

Maryland's policy identified Laser as the named insured and further provided, in relevant part,

2. Each of the following is also an insured:

. . . .

(i) Any person or organization who is the lessor of leased equipment leased to you, but only with respect to their liability arising out of the maintenance, operation or use by you of such equipment subject to the following additional exclusions:

This insurance does not apply to:

(1) Any "occurrence" that takes place after the equipment lease expires; or

(2) "Bodily injury" or "property damage" arising out of the sole negligence of that person or organization.

Maryland filed an answer, generally denying the allegations and asserting that, even if NES qualified as an additional insured, coverage for NES was barred because NES had failed to comply with the "voluntary payment"[5] and notice provisions of the policy. The policy, in relevant part, provided,

Section IV—Commercial General Liability Conditions

2. Duties in the event of an occurrence, Offense, Claim or Suit.

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received, and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

. . . .

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Maryland's policy also contained the following endorsement:

---

3. American and Illinois also asserted a contractual indemnity claim against Laser, but the trial court granted summary judgment in favor of Laser on this claim, and American and Illinois do not challenge this ruling.

4. American and Illinois also sought the attorney's fees expended in the instant suit against Maryland.

5. Although Maryland has characterized one of NES's alleged policy violations as arising from the "voluntary payment" provision of the policy, based on the actual arguments made by Maryland in its briefing, we refer to this alleged violation as arising from the settlement-without-consent provision of the policy.

*Texas Changes–Conditions Requiring Notice*

. . . .

With regard to Bodily Injury and Property Damage Liability, unless we are prejudiced by the insured's or your failure to comply with the requirement, any provision of this Coverage Part requiring you or any insured to give notice of "occurrence," claim or "suit," or forward demands, notices summonses or legal papers in connection with a claim or "suit" will not bar coverage under this Coverage Part.

Concurrent with filing its answer, Maryland filed a summary judgment motion, in which it asserted that, even assuming that NES qualified as an additional insured,[6] NES had "lost any coverage" by violating the above policy provisions. In support of its motion, Maryland attached an October 17, 2002 letter from NES's counsel to Laser's counsel in which NES, for the first time, sought "insurance coverage" for the *Vasquez* lawsuit. By October 17, 2002, American and Illinois had already fully settled the *Vasquez* lawsuit on NES's behalf. Thus, Maryland's evidence established that NES did not seek a defense or insurance coverage from Maryland, based upon the assertion that NES qualified as an additional insured under Maryland's policy, until after American and Illinois had entered into the *Vasquez* settlement.

This evidence further established that Maryland did not have the opportunity to investigate or defend the claims made against NES in the *Vasquez* lawsuit, review and consider the *Vasquez* settlement, or consent to the *Vasquez* settlement.[7]

In their summary judgment response, American and Illinois did not dispute that they, as subrogees of NES, had demanded insurance coverage from Maryland for the amounts they had paid to settle the *Vasquez* lawsuit after they had entered into the settlement. American and Illinois also did not dispute that both they and NES had failed to give Maryland any notice, before settlement, that NES claimed to be an additional insured and that NES expected to be covered and defended by Maryland for the *Vasquez* lawsuit and settlement. Rather, they asserted that Laser had first produced Maryland's policy to NES "[s]hortly after the conclusion of the underlying *Vasquez* lawsuit."[8] American and Illinois claimed that, at that point, they first noticed the additional insured provision and that NES then sent Laser and Maryland the October 17, 2002 letter requesting coverage. American and Illinois further asserted that it was undisputed that Laser, prior to the *Vasquez* settlement, had knowledge of NES's claim for contractual indemnification under the equipment lease agreement,[9] "Laser never informed [NES] of the additional insured

---

**6.** Maryland also asserted that American and Illinois did not qualify as an insured under Maryland's policy.

**7.** As noted above, in April 2002, NES filed a third-party petition against Laser in the *Vasquez* lawsuit, in which Laser asserted a contractual indemnity claim. At that time, NES did not assert any claim for insurance coverage nor did it make any claim that it was an additional insured under Maryland's policy.

**8.** Maryland disputes this allegation and contends that NES acquired a copy of the policy

as early as June 2002, before the *Vasquez* settlement.

**9.** In support of this argument, American and Illinois argued that Laser had participated in the *Vasquez* lawsuit, was active in two depositions taken in the *Vasquez* lawsuit, and was "on notice of the proposed mediation in the *Vasquez* [law]suit, but decided not to attend the mediation." Nevertheless, it is undisputed that NES never made a claim that it was entitled to coverage under Maryland's policy as an additional insured until after the *Vasquez* lawsuit was fully settled.

provision in [Maryland's] policy," and NES "could not have known of the additional insured provision in [Maryland's] policy until that policy was produced to NES." Finally, American and Illinois asserted that "an additional insured's lack of knowledge concerning the existence of coverage can sometimes excuse delayed notice and voluntary payment."

American and Illinois also filed a motion for summary judgment, in which they asserted that NES qualified as an additional insured under Maryland's policy. In a portion of their summary judgment motion entitled "damages," American and Illinois repeated their contention that they had collectively incurred $2,250,000 in liability in the *Vasquez* lawsuit.[10] Maryland filed a response to American and Illinois's summary judgment motion, in which it again argued that NES was not entitled to coverage because it had violated the notice and settlement-without-consent provisions of the policy.

The trial court granted American and Illinois's motion for summary judgment and, in its order, found that NES was "entitled to be paid/reimbursed from [Maryland's] policy in the amount of $2,250,000," representing the full amount allegedly incurred by American and Illinois in the *Vasquez* lawsuit. The trial court also awarded American and Illinois its attorney's fees and expenses for both the *Vasquez* lawsuit and the instant suit.

The trial court denied Maryland's summary judgment motion.

Maryland then filed a motion to modify judgment, in which it stated that its policy provided coverage only in the amount of $1,000,000 for each occurrence, and it asked the trial court to change the judgment to reflect that Maryland could be obligated to pay, at most, its policy limit of $1,000,000. Maryland also argued that the judgment should be modified to reflect "the effect of other insurance clauses contained" in its policy and American's policy. Maryland contended that it and American were "co-primary" insurers, and thus they were required to contribute equal shares.[11] The trial court denied Maryland's motion to modify judgment.

We dismissed Maryland's initial appeal of the summary judgments for lack of a final, appealable judgment. *See Md. Cas. Co. v. Am. Home Assurance Co.*, No. 01–06–00237–CV, 2007 WL 926514 (Tex.App.-Houston [1st Dist.] Mar. 29, 2007, no pet.) (mem.op.). On remand, the trial court signed a final judgment in favor of American and Illinois and incorporated its previous summary judgments. Maryland then filed a motion for new trial, a motion for reconsideration, and a motion to reopen summary judgment evidence, all of which the trial court denied.

### Standard of Review

▆▆▆ To prevail on a summary judgment motion, a movant has the burden of

---

10. In their summary judgment motion, American and Illinois represented that the settlement agreement, which presumably evidences the settlement amounts, had been filed with the trial court under seal. However, the settlement agreement does not appear in the record before us, and there is no other evidence in the record substantiating the settlement amounts. In fact, other than simply making a general claim for the "settlement amounts as stated above" and asserting that NES qualified as an additional insured, American and Illinois did not present any evidence establishing the amounts that they contended that Maryland was required to pay them under the Maryland policy for the occurrences at issue.

11. Maryland, in its motion to modify, appears to agree with the statements in American and Illinois's petition that American was a primary insurer of NES and that Illinois was not a primary insurer. However, we note that the parties failed to include American's and Illinois's policies in the record.

proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). A plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell,* 193 S.W.3d 87, 95 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey,* 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.,* 177 S.W.3d 399, 404 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex.2004).

### Additional Insured's Violation of Notice and Settlement–Without–Consent Provisions

■ In part of its second issue, Maryland argues that the trial court erred in denying its summary judgment motion and in rendering summary judgment in favor of American and Illinois because the evidence conclusively established that NES failed to comply with "the conditions precedent to coverage,"[12] namely the notice and settlement-without-consent provisions of the policy. Maryland asserts that its right to adjust and defend against the underlying claims against NES in the *Vasquez* lawsuit was prejudiced as a matter of law by NES's violations of Maryland's policy. American and Illinois do not dispute that NES first gave notice to Maryland of its additional insured claim only after they had settled the *Vasquez* lawsuit. American and Illinois assert, however, that Maryland presented no evidence that it was actually prejudiced by the alleged policy breaches. American and Illinois also assert that Maryland's actual knowledge of the claims against NES in the *Vasquez* lawsuit and Maryland's participation in that suit through the defense of Laser "prevents any claim by [Maryland] that it was prejudiced as a matter of law."

We begin our analysis of the effect of NES's policy violations on American's and Illinois's subrogation claims by considering the Texas Supreme Court's recent opinion in *National Union Fire Insurance Co. of Pittsburgh, PA. v. Crocker,* 246 S.W.3d 603 (Tex.2008). In *Crocker,* the supreme court considered, on certified questions from the United States Court of Appeals for the Fifth Circuit,[13] "whether an insurer has a duty to notify an additional insured of available liability coverage." *Id.* at 604.

12. Maryland refers to the notice and settlement-without-consent provisions as conditions precedent. The supreme court has indicated that these provisions are properly construed as covenants and not conditions precedent, and we will analyze them as such. *See PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 636 (Tex.2008) (stating that "[c]ondi-tions are not favored in the law" and that "when another reasonable reading that would avoid a forfeiture is available, [a court] must construe contract language as a covenant rather than a condition").

13. *Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,* 466 F.3d 347 (5th Cir.2006).

Crocker, a nursing home resident, filed suit against a nursing home employee and the nursing home corporate owner for personal injuries that she sustained while at the home. *Id.* The corporation was covered by a commercial general liability policy and the employee, unbeknownst to him, qualified as an additional insured under the policy. *Id.* at 604–05. The insurer did not inform the employee that he was an additional insured, nor did it offer to defend him in the suit. *Id.* at 605. After the employee was served, he did not forward the suit papers to the insurer, did not request a defense from the insurer, did not answer the lawsuit, and did not appear at trial. *Id.* The trial court severed Crocker's claims against the non-answering employee, and the case was submitted to a jury, which returned a take-nothing verdict in favor of the corporation after finding that the corporation and its employees were not negligent. *Id.* The trial court, however, then entered a $1 million default judgment against the employee. *Id.*

Crocker then brought a suit against the liability insurer to collect the judgment, asserting that the employee qualified as an additional insured under the insurer's policy and that she was a third party beneficiary under the policy. *Id.* at 605. The insurer argued that because the employee, its additional insured, had failed to comply with the policy's notice-of-suit provision, he had never invoked coverage or his right to a defense and Crocker, "who now purport[ed] to stand in [the employee's] shoes," could not collect under the policy. *Id.* Crocker responded that even though the employee had not complied with the policy's notice provision, the insurer was not prejudiced because it had actual knowledge of the suit. *Id.* Crocker asserted that the insurer's failure to notify the employee that he was covered as an additional insured under the policy, coupled with its actual knowledge of the suit,

amounted to a breach of the insurer's duty to defend, making the insurer liable for the default judgment. *Id.* at 605–06.

On these facts, the Fifth Circuit, in its first certified question, asked:

> Where an additional insured does not and cannot be presumed to know of coverage under an insurer's liability policy, does an insurer that has knowledge that a suit implicating policy coverage has been filed against its additional insured have a duty to inform the additional insured of the available coverage?

*Id.* at 606.

The Texas Supreme Court emphasized that "notice and delivery-of-suit-papers provisions in insurance policies serve two essential purposes: (1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they trigger the insurer's duty to defend by *notifying the insurer that a defense is expected.*" *Id.* at 606–08 (citing *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 368–70 (Tex.1978) and *Harwell v. State Farm Mut. Auto. Insur. Co.*, 896 S.W.2d 170, 172, 174 (Tex.1995)) (emphasis added). The supreme court continued, "Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the additional insured first *requests* a defense—a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf." *Id.* at 608. The supreme court concluded that "an insurer that has not been notified that a defense is expected bears no extra-contractual duty to provide notice that a defense is available to an additional insured who has not requested one." *Id.* Thus, the supreme

court answered the first certified question, "no." *Id.*

In its third certified question,[14] which is equally important to this case, the Fifth Circuit asked the Texas Supreme Court:

Does proof of an insurer's actual knowledge of service of process in a suit against its additional insured, when such knowledge is obtained in sufficient time to provide a defense for the insured, establish as a matter of law the absence of prejudice to the insurer from the additional insured's failure to comply with the notice-of-suit provisions of the policy?

*Id.* at 609. The supreme court also answered this question, "no." *Id.* The supreme court first noted that the insurer "was *obviously prejudiced* in the sense that it was exposed to a $1 million judgment." *Id.* (emphasis added). The supreme court then stated, "[t]he question, however, is not whether [the insurer] suffered exposure to a financial risk, but whether it should be estopped to deny coverage because it was aware that [the employee, its additional insured,] had been sued and served and had ample time to defend him." *Id.* The supreme court stated that the answer to this alternative question must also be "no," based upon its prior conclusion that the insurer had no duty to notify the employee of coverage and no duty to defend the employee until

the employee notified the insurer that he had been served and expected the insurer to provide a defense on his behalf. *Id.* The supreme court reasoned that because the insurer was not under a duty to defend the suit against the additional insured when it received notice of the claim, it was not estopped from asserting that the additional insured's breach of the policy's notice provision barred the insurer's liability. *Id.* (citing *Harwell,* 896 S.W.2d at 175). Most relevant to the issue in this case, the supreme court explained, "Absent a threshold duty to defend, *there can be no liability to [the additional insured], or to Crocker derivatively.*"[15] *Id.* (emphasis added).

The supreme court concluded that "[i]nsurers owe no duty to provide an unsought, uninvited, unrequested, unsolicited defense." *Id.* at 610. It reasoned that because "insurers need not provide coverage to additional insureds who never seek it," the insurer at issue had no duty to inform the employee of coverage or to voluntarily undertake his defense and the insurer's "actual knowledge did not establish lack of prejudice as a matter of law." *Id.*

Based upon these answers, the Fifth Circuit remanded the case to the district court for the entry of a judgment that Crocker take nothing by her suit against the insurer. *Crocker v. Nat'l Union Fire*

---

14. The supreme court did not consider the second question certified by the Fifth Circuit because it was conditioned on an affirmative answer to the first certified question. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Crocker,* 246 S.W.3d 603, 608 n. 30 (Tex.2008).

15. The supreme court explained that "the requirement that an additional insured provide notice that it has been served with process ... lets the insurer know that the insured is subject to default and expects the insurer to interpose a defense." *Id.* at 609–10. The court further explained,

An insurer cannot necessarily assume that an additional insured who has been served but has not given notice to the insurer is looking to the insurer to provide a defense. Potential insureds, for a variety of reasons, might well opt against seeking a defense from an insurer. For example, an additional insured may opt against invoking coverage because it wants to hire its own counsel and control its own defense.

*Id.* at 610.

*Ins. Co. of Pittsburgh, PA.*, 526 F.3d 240, 241 (5th Cir.2008). The court summarized the supreme court's opinion as follows:

> It is clear from the opinion of the Texas Supreme Court that, because [the additional insured employee] never gave [the insurer] any notice of the suit, never complied with the [insurer's] policy's relevant notice provisions, never furnished it copies of any relevant papers as required by the policy, and never in any manner requested a defense from [the insurer], that [the insurer] owed no duty to defend [the additional insured employee], or to *sua sponte* notify him that its policy covered him, and *was entitled to rely on its policy provisions precluding coverage on the basis of such non-compliance.*

*Id.* (emphasis added).

*Crocker* and the instant case are similar in many significant respects. Like the additional insured in *Crocker*, NES failed to forward the suit papers to its liability insurer and notify its insurer that it expected a defense and coverage for claims asserted against it. Like the additional insured in *Crocker*, NES lacked knowledge of its additional insured status and of the policy provisions upon which its insurer subsequently sought to disclaim liability. Like the liability insurer in *Crocker*, Maryland had actual knowledge of suit being brought against its additional insured [16] but did not gratuitously offer its additional insured a defense. Like the liability insurer in *Crocker*, Maryland did not receive a request for coverage from its additional insured until after the additional insured's liability had been settled or adjudicated. Moreover, like the liability insurer in *Crocker*, Maryland asserted that it was prejudiced by its additional insured's violation of the notice provision of the liability policy and sought to avoid coverage for its additional insured's liability that had been adjudicated or settled.[17]

Based on these significant similarities, we conclude that the analysis employed by the supreme court in *Crocker* guides the disposition of the instant case. *Crocker* makes clear that Maryland is entitled to rely upon its notice and settlement-without-consent policy provisions to preclude coverage to NES upon a showing that it was prejudiced by NES's violation of these policy provisions. *Crocker* also makes clear that Maryland is entitled to rely upon these policy provisions to defeat coverage despite the fact that it had notice that NES had been sued in the *Vasquez* lawsuit and despite the allegation (which is disputed by Maryland) that NES was not aware of the additional insured provision in Maryland's policy until after the *Vasquez* settlement, when it first obtained a copy of Maryland's policy. Here, the question is whether Maryland established, or at least raised a fact issue showing, that it was prejudiced by NES's violation of these policy provisions.

■ The supreme court in *Crocker* ultimately concluded that the insurer's "actual knowledge did not establish lack of prejudice as a matter of law."[18] Nevertheless,

---

16. Maryland had actual knowledge of suit being brought against NES, but Maryland disputed below whether NES did, in fact, qualify as an additional insured.

17. We recognize that in *Crocker* the insurer sought to avoid coverage for a default judgment entered against its additional insured, whereas in this case Maryland seeks to avoid coverage for a settlement payment made by

its additional insured that the parties represent was later made the subject of an agreed judgment.

18. The supreme court's opinion was provided in response to the Fifth Circuit's question asking whether the insurer's actual knowledge of the suit against its additional insured established "the absence of prejudice" to the insurer as a matter of law. *Crocker*, 246

the Fifth Circuit, by remanding the case to the district court for the entry of a take-nothing judgment, necessarily interpreted the supreme court's *Crocker* opinion to indicate that the insurer, based on the circumstances presented in that case, had established, as a matter of law, that it had been prejudiced by its additional insured's violation of the liability insurance policy's notice provision. *See Crocker*, 526 F.3d at 241. We also conclude that Maryland has established, as a matter of law, that under the circumstances presented, it was prejudiced by NES's failure to provide it notice of the claims made against it in the *Vasquez* lawsuit and by NES's entry into the *Vasquez* settlement without Maryland's consent. Here, similar to the facts of *Crocker*, the notice—provided only after the claims had been settled—was so late that it wholly deprived Maryland of its ability to defend the lawsuit. *See Crocker*, 526 F.3d at 241; *Motiva Enters., LLC v. St. Paul Fire & Marine Ins., Co.*, 445 F.3d 381, 386–87 (5th Cir.2006) (holding that

insurer suffered prejudice as matter of law by insured's breach of consent-to-settle provision when insurer was not consulted about settlement and insurer had no opportunity to participate in or consent to settlement); *see also Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 166 (Tex.1993) (concluding that insurer had been prejudiced as matter of law by default judgment entered against insured).[19] Accordingly, we hold that the trial court erred in granting American and Illinois's summary judgment motion and in denying Maryland's summary judgment motion.

■ The facts here—notice provided only after resolution of the claims—are significantly different from facts in cases recognizing that an insured's tardy notice of suit did not defeat coverage because the insurer was not actually prejudiced by the delay. For example, in *PAJ, Inc. v. Hanover Insurance Co.*, the insured did not notify its insurer of a suit against it until

---

S.W.3d at 609–10. Thus, although the supreme court stated that the facts "did not establish a lack of prejudice as a matter of law," we read the supreme court's *Crocker* opinion to support the Fifth Circuit's interpretation that the insurer, on those facts, established that it had been prejudiced as a matter of law. *Id.*

In their appellate briefing, American and Illinois argue that Texas case law rejects the concept of prejudice as a matter of law and further argue that Maryland did not present any evidence that it had actually been prejudiced. However, *Crocker* indicates that an insurer can establish that it has been prejudiced as a matter of law based upon the factual circumstances presented. For example, in *Crocker*, the supreme court specifically stated that "[a]bsent a threshold duty to defend, there [could] be no liability" to the additional insured employee or to the underlying plaintiff derivatively. *Id.* at 609. Accordingly, we must reject American and Illinois's suggestion that, in order to establish prejudice, Maryland had to introduce evidence specifically challenging the amount of the settle-

ment or the quality of NES's defense in the *Vasquez* lawsuit.

**19.** We note that in *Liberty Mutual Insurance Co. v. Cruz*, the Texas Supreme Court stated that "an insurer that is not notified of suit against its insured until a default judgment has become final, *absent actual knowledge of the suit*, is prejudiced as a matter of law." 883 S.W.2d 164, 166 (Tex.1993) (emphasis added). The supreme court in *Crocker* did not address this passage in *Cruz*, which could be interpreted to suggest that an insurer who has actual knowledge of suit against its insured cannot show prejudice as a matter of law. However, the more recent supreme court opinion in *Crocker* indicates that, even with actual knowledge of a suit pending against its additional insured, an insurer may establish that it has been prejudiced as a matter of law when its additional insured has violated the policy by wholly failing to provide the insurer with notice that the insured has been sued and expects a defense and coverage and has settled the case without the insurer's knowledge or consent.

four to six months after litigation had commenced. 243 S.W.3d 630, 631 (Tex.2008). The parties stipulated that the insured, in violation of the policy, had failed to notify the insurer of the claims "as soon as practicable," but the parties also stipulated that the insurer had not been "prejudiced by the untimely notice." *Id.* The Texas Supreme Court held that "an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." [20] *Id.* at 636–37; *see also Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.,* 218 S.W.3d 279, 295–96 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (holding that insurer had produced no evidence that "late notice" prevented it from investigating suit or assuming control of defense and that insurer had failed to prove actual prejudice, in part, because insurer "had the option to participate in settlement negotiations" and could have assumed control of entire defense); [21] *Hanson Prod. Co. v. Ams. Ins. Co.,* 108 F.3d 627, 629 (5th Cir.1997) (holding that, in Texas, insurers cannot prevail on "late notice defense" unless they are prejudiced). But, as the supreme court has noted, determining whether prejudice arises from a tardy notice is a different inquiry than determining whether prejudice arises from a complete lack of notice. *See Crocker,* 246 S.W.3d at 609 (highlight-

---

**20.** In *Crocker,* which was issued on the same day as *PAJ,* the supreme court explained the distinction between the two cases as follows:

> Recently, in *PAJ, Inc. v. Hanover Insurance Co.,* we held that tardy notice of a covered claim will not defeat coverage unless the insurer was actually prejudiced by the delay. The issue in *PAJ* was whether a named insured's untimely compliance with the notice-of-suit provision is excused if the delay inflicts no prejudice on the insurer. There are fundamental differences, however, between *PAJ* and today's case: in *PAJ,* the named insured made a request for coverage under the policy, albeit several months after "as soon as [was] practicable." *In the pending case, however, the additional insured's notice was not merely late; it was wholly lacking. PAJ's notice was tardy; [the additional insured employee's notice] was nonexistent.*

*Crocker,* 246 S.W.3d at 609.

**21.** In *Coastal Refining & Marketing, Inc. v. United States Fidelity and Guaranty Co.,* our sister court stated that whether an insurer is prejudiced by "delayed notice is generally a question of fact." 218 S.W.3d 279, 287 (Tex. App.-Houston [14th Dist.] 2007, pet. denied). However, our sister court went on to recognize that prejudice from delayed notice may sometimes be established as a matter of law. *Id.* at 287–88. For example, the court stated that "[e]ntry of a default judgment will ordinarily constitute prejudice as a matter of law." *Id.* at 287. The court explained that the substantive change in position for an insurer caused by a default judgment generally renders a default judgment prejudicial because "[b]efore default judgment, an insurer can escape liability for a covered claim if the plaintiff fails to meet its burden of proof," whereas "[a]fter a default judgment, ... an insurer can no longer defend against the underlying claim unless it first meets a new burden of proof on new issues." *Id.* at 288. The court also specifically stated that it was not "foreclos[ing] the possibility that an insurer could be prejudiced by events other than default judgment." *Id.* at 287–88. For the same reasons an insurer is prejudiced by a default judgment, when an additional insured settles a third-party claim made against it without ever notifying its insurer of the claim, the insurer would also generally seem to suffer a substantive change in position and thus be prejudiced. *Id.* at 296. Our sister court appeared to specifically recognize prejudice arising under these circumstances when it stated, "[N]or do we imply that an insurer cannot be excused from the duty to indemnify its insured or the insured's subrogees *for the costs of a settlement made without the insurer's consent if the only prejudice shown is non-monetary.*" *Id.* (emphasis added); *But see Lennar Corp. v. Great Am. Ins. Co.,* 200 S.W.3d 651, 690–91 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (rejecting argument that insurer was prejudiced as matter of law by insured's settlement of third-party claims made against it before notifying insurer).

ing that additional insured's notice in *Crocker* "was not merely late; it was wholly lacking"). As in *Crocker*, the notice here was wholly lacking. Under the circumstances presented in the instant case, wholly lacking notice, as opposed to merely late notice, supports a finding of prejudice as a matter of law. *See Crocker*, 526 F.3d at 241.

In support of their argument that Maryland was not prejudiced, American and Illinois also cite *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex.1994). Hernandez was killed when a car in which she was riding flipped, and the sole proximate cause of the accident was the negligence of the car's teenage driver. *Id.* at 692. The teenage driver's only asset was a $25,000 liability policy. *Id.* Hernandez was also covered by her parents' insurance policy, which included uninsured/underinsured motorist coverage in the amount of $100,000. *Id.* Hernandez's damages exceeded $125,000, and weeks after the accident, the Hernandezes, without their insurer's consent, settled with the teenage driver for the limits of his $25,000 policy. *Id.* The Hernandezes then sought to recover from their insurer under the underinsured motorist coverage, but their insurer denied coverage based upon the Hernandezes' failure to obtain its consent before settling with the driver. *Id.*

The Hernandezes argued that the settlement-without-consent exclusion was unenforceable absent the insurer's showing that it was prejudiced. *Id.* at 692. The Texas Supreme Court agreed, concluding that "an insurer who is not prejudiced by an insured's settlement may not deny coverage under an uninsured/underinsured motorist policy that contains a settlement-without-consent clause." *Id.* at 693. The supreme court recognized that "[i]n the

context of an underinsured motorist claim, there may be instances when an insured's settlement without the insurer's consent prevents the insurer from receiving the anticipated benefit from the insurance contract; specifically, the settlement may extinguish a valuable subrogation right." *Id.* The supreme court, however, further recognized that, in other instances, "the insurer may not be deprived of the contract's expected benefit, because any extinguished subrogation right has no value," and, thus, the insured's breach is not material. *Id.* The supreme court noted that the Hernandezes' insurer had stipulated "that it knew of no case in which it ha[d] refused its consent to settle a claim when an underinsured driver ha[d] tendered the full limits of his or her policy." *Id.* The insurer also stipulated that the teenage driver's sole asset was his $25,000 policy. *Id.* Even more significantly, the insurer stipulated that it had not incurred any financial losses "with regard to its subrogation rights." *Id.* at 693–94. Applying materiality principles, and based upon these stipulations, the supreme court concluded that the insurer "remain[ed] in the same position it would have occupied had the Hernandezes complied with the settlement-without-consent clause" and, thus, the Hernandezes' breach was not material and the insurer had not been prejudiced. *Id.*

However, American and Illinois's proposed application of *Hernandez* to the instant case stretches too far. The procedural posture of the parties in *Hernandez* differs significantly from the procedural posture of the parties in the instant case as well as the parties in *Crocker*. Unlike the third-party insurers in *Crocker* and the instant case, the first-party insurer in *Hernandez* was not complaining that it had lost its right to defend a lawsuit filed against its insured. Rather, the insurer in

*Hernandez* essentially stipulated that its substantive position had not been changed by the Hernandezes' conduct. *See Hernandez*, 875 S.W.2d at 693–94. The facts thus dictated a different result.[22]

We sustain that portion of Maryland's second issue in which it argues that the trial court erred in denying its summary judgment motion and in rendering summary judgment in favor of American and Illinois because NES failed to comply with the notice and settlement-without-consent provision of its policy.

---

**22.** In their motion for rehearing, American and Illinois rely on *Struna v. Concord Insurance Services., Inc.*, to support their argument that Maryland has made no showing of prejudice. 11 S.W.3d 355 (Tex.App.-Houston [1st Dist.] 2000, no pet.). However, *Struna* is substantively distinguishable. In *Struna*, another driver, who was insured by Concord, ran a red light and collided with Struna's car. *Id.* at 356. Approximately ten days after the accident, Struna contacted Concord regarding the accident, and, shortly thereafter, presumably in response to Struna's claims for damages, Concord paid Struna for property damage to her car and reimbursed her rental car expenses. *Id.* Struna subsequently sued the insured, but the insured never contacted Concord about the accident or lawsuit, and, ultimately, Struna obtained a $250,000 default judgment against the insured. *Id.* Struna then filed suit against Concord, and Concord filed a summary judgment motion, arguing that it could not be held liable because its insured had failed to provide notice of the lawsuit and had failed to cooperate in the investigation. *Id.* at 357. We stated that whether an insurer is prejudiced by lack of notice "is *generally* a question of fact" and we noted that, although the insured had not contacted Concord about the accident or the lawsuit, Struna's attorney had contacted Concord on at least five occasions. *Id.* at 356–57, 359–60 (emphasis added). First, Struna contacted Concord and informed it that she was filing suit against its insured, and Struna provided Concord with a copy of her petition. *Id.* Second, Struna contacted Concord and informed it that she had served the insured by substitute service and informed Concord that she was going to seek a default judgment. *Id.* Struna also provided Concord with a copy of the order authorizing substitute service. *Id.* Third, Struna notified Concord as soon as she had obtained a default judgment, and Struna enclosed a copy of the default judgment and notified Concord of the date of the upcoming damages hearing. *Id.* This letter also referenced a prior telephone conference between Struna and Concord. *Id.* Fourth, prior to the damages hearing, Struna forwarded her medical records to Concord. *Id.* Fifth, on the same day she obtained the $250,000 default judgment, Struna sent a copy of the judgment to Concord. *Id.* In sum, we stated,

> Struna notified Concord [] within two weeks of the car accident, and Struna's attorney contacted Concord [] regarding the underlying [] lawsuit, providing adequate time to respond, before he took any significant action in the case: before filing suit; before effecting substituted service; before the hearing on the default motion; and before the damages hearing and entry of the final default judgment.

*Id.* at 360. We concluded that Concord had failed to meet its burden to show prejudice as a matter of law under these facts, stating, "*This is not a case* in which the insurer was prejudiced as a matter of law." *Id.* (emphasis added). Thus, in *Struna*, we acknowledged that prejudice may exist as a matter of law in some circumstances. *See id.* Moreover, unlike in *Struna*, in this case it is undisputed that no party provided Maryland with notice of a claim that NES qualified as Maryland's additional insured or that claims had been made against NES in its capacity as Maryland's additional insured until after the resolution of those claims.

**Conclusion**

Having held that Maryland established that it had been prejudiced as a matter of law by NES's policy violations, we need not consider Maryland's remaining issues. We reverse the judgment of the trial court, and we render judgment that American and Illinois, as subrogees of NES, take nothing on their claims against Maryland.