**Affirmed and Opinion filed February 25, 2020.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-14-00824-CV

**STATE FARM LLOYDS, Appellant**

**V.**

**CANDELARIO FUENTES AND MARIA FUENTES, Appellees**

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2010-61039**

## OPINION

This case—involving State Farm Lloyds's challenge to a final judgment issued in favor of Candelario and Maria Fuentes in a Hurricane Ike insurance-related dispute—returns to us on remand from the Supreme Court of Texas. On initial review, we overruled State Farm's issue challenging the trial court's disregard of two jury findings. We concluded State Farm failed to attack an independent ground supporting the judgment and waived briefing of the argument that breach of contract is a prerequisite to extra-contractual claims.

On review, the Supreme Court of Texas "conclude[d] simply that the considerations that led us to remand for a new trial in [*USAA Texas Lloyds Co. v.*] *Menchaca*[, 545 S.W.3d 479 (Tex. 2018),] similarly dictate that State Farm's first issue—whether the trial court properly disregarded some of the jury's findings—should be remanded to the court of appeals for reconsideration in light of *Menchaca*." *State Farm Lloyds v. Fuentes*, 549 S.W.3d 585, 587 (Tex. 2018) (per curiam).

Having now concluded that the trial court properly disregarded the jury findings and that the trial court's judgment is consistent with the rules announced in *Menchaca*, we again affirm.

## I.   BACKGROUND

Our original opinion contains pertinent factual and procedural background. *See State Farm Lloyds v. Fuentes*, No. 14-14-00824-CV, 2016 WL 1389831, at *1–2 (Tex. App.—Houston [14th Dist.] Apr. 7, 2016) (mem. op.), *aff'd in part, vacated in part*, 549 S.W.3d 585 (Tex. 2018). We summarize and add background as necessary.

Candelario and Maria Fuentes evacuated their home in Baytown, Texas, during Hurricane Ike in September 2008. During the storm, a tree fell onto their house, landing right above their master bedroom. They returned to a damaged roof, home, fence, and shed. The Fuenteses speak almost no English; their daughter notified their homeowners' insurer State Farm about the loss.

When adjuster Dustin Namirr inspected the damage on November 12, 2008, he gave the Fuenteses a check for $4,988.83 to cover roof replacement, and repairs on a window, window screen, fence, and shed, as well as a check for $350 for food loss, and closed the claim. Namirr is not fluent in Spanish, spoke to the Fuenteses in

English, and gave the Fuenteses documents in English. Namirr did not allow for any interior water damage; in the claim file, he did not include any discussion of an interior inspection or the photos he took of the home's interior. The interior photos "were deleted off of [his] computer." The Fuenteses received no written explanation from State Farm for its denial of their claim for interior damage.

The Fuenteses brought claims against State Farm for breach of contract, violations of the Insurance Code, breach of the duty of good faith and fair dealing, and fraud. The jury found:

- Both the Fuenteses and State Farm failed to comply with the insurance policy.

- The Fuenteses failed to comply first.

- State Farm engaged in unfair or deceptive acts or practices by failing to promptly provide the Fuenteses a reasonable explanation for the denial of a claim; refusing to pay a claim without conducting a reasonable investigation with respect to a claim; and misrepresenting to the Fuenteses a material fact or policy provision relating to the coverage at issue.[1]

- The Fuenteses provided written notice of their claim to State Farm on September 22, 2008.

- The Fuenteses provided all items, statements, and forms reasonably requested and required by State Farm as to their Hurricane Ike claim on November 12, 2008.

- State Farm waived its right to written notice of a claim from the Fuenteses.

- State Farm knowingly refused to pay a claim without conducting a reasonable investigation with respect to the claim.

- State Farm failed to comply with its duty of good faith and fair dealing to the Fuenteses.

- State Farm committed fraud against the Fuenteses.

---

[1] *See* Tex. Ins. Code Ann. § 541.060(a)(1), (3), (7).

- The jury awarded the Fuenteses $18,818 as the difference between the amount paid by State Farm to the Fuenteses and the amount State Farm should have paid under the policy.

- With regard to damages proximately caused by State Farm's unfair or deceptive acts, by State Farm's failure to comply with its duty of good faith and fair dealing, and by State Farm's fraud, the jury awarded the Fuenteses $18,818 as the cost to repair property damages by Hurricane Ike, less any amount previously paid by State Farm to repair the same damage; $8,750 in past mental anguish sustained by Candelario; $8,750 in past mental anguish sustained by Maria; $4,750 in future mental anguish as to Candelario; and $4,750 in future mental anguish as to Maria.

- The jury awarded the Fuenteses an additional $7,527 due to State Farm's knowing conduct.

- With regard to attorney's fees, the jury awarded the Fuenteses $254,545 for trial court representation; $25,000 for appellate representation in the court of appeals; and $25,000 for representation in the Supreme Court of Texas: $7,500 at the petition-for-review stage, $10,000 at the merits-briefing stage, and $7,500 through oral argument and completion of the proceedings.

State Farm moved for judgment in its favor on the contract claim based on the Fuenteses' failure to comply with the insurance policy. State Farm also moved for judgment in its favor on the extra-contractual claims based on the theory that those claims did not survive when the Fuenteses did not prevail on their contract claim.

The Fuenteses responded and requested judgment in their favor. They asked the trial court to disregard the jury findings in questions 1b and 2 that they failed to comply with the policy and failed to comply first, claiming there was no evidence to support the findings and the findings were immaterial. The Fuenteses also argued that even if State Farm's breach of contract were excused, they could recover on their extra-contractual claims because the jury found that State Farm failed to comply with the policy and the amount that should have been paid by State Farm to them under the policy was $18,818.

4

In its final judgment, the trial court disregarded the jury's answers to questions 1b and 2 and rendered judgment in the Fuenteses' favor based on all the other jury findings. On appeal, State Farm argued two issues: (1) the trial court erred in disregarding the jury findings that the Fuenteses committed a prior material breach and (2) the trial court erred in excluding evidence of the Fuenteses' excessive demand. We initially affirmed the trial court's judgment. *Id.* at *1.

On the first issue, we concluded that because State Farm had not attacked all the independent grounds supporting the judgment—specifically, all the findings related to the Insurance Code violations, breach of the duty of good faith and fair dealing, and fraud—and those findings could fully support the judgment, we had to accept their validity and affirm. *Id.* at *4. We also concluded that State Farm did not adequately brief and, therefore, waived "any challenge to the findings in the Fuenteses' favor on the Insurance Code claims." *Id.* at *5. Because State Farm did not argue that "breach of contract is a prerequisite to extra-contractual claims" until its reply brief and the Fuenteses' brief did not join the issue, we concluded that such argument was waived. *Id.* We therefore overruled the first issue. *Id.* at *6.

We overruled the second issue because State Farm did not establish that the trial court's exclusion of evidence of the demand letter probably resulted in rendition of an improper judgment or that the Fuenteses were precluded from their statutory right to attorney's fees as a matter of law. *Id.* at *6–7.

State Farm sought review, arguing that it did not waive its first issue because extra-contractual findings are not freestanding grounds supporting the judgment, but rather are dependent on contractual liability. State Farm maintained that it consistently argued that the jury findings on the Fuenteses' breach precluded any liability, contractual or otherwise, as a matter of law. State Farm contended that any lack of clarity in its briefing was due to the confusion in the law that existed before

5

*Menchaca*.[2]

The Supreme Court of Texas affirmed this court's judgment as to State Farm's second issue. *Fuentes*, 549 S.W.3d at 587–88. On State Farm's first issue, the court did not "pass judgment" on this court's "briefing waiver analysis," but concluded that "the considerations that led [the supreme court] to remand for a new trial in *Menchaca* similarly dictate that State Farm's first issue—whether the trial court properly disregarded some of the jury's findings—should be remanded to the court of appeals for reconsideration in light of *Menchaca*." *Id.* at 587.

## II.  ANALYSIS

### A. Partial reversal of our prior judgment

We first consider the Fuenteses' argument that this court should still hold State Farm failed to challenge all freestanding grounds supporting the trial court's judgment and waived any argument that the judgment could not be affirmed on any extra-contractual theory of recovery. The Fuenteses also contend that this court should feel free to find waiver again because in its opinion the higher court "pass[ed] no judgment on" and merely vacated this court's judgment on the disregarding-findings issue.

State Farm replies that were this court to again affirm the trial court's judgment based on purported waiver, such a result effectively would thwart the Supreme Court of Texas's judgment and mandate, which both state that this court's "judgment that [State Farm] waived its argument that the trial court improperly disregarded jury findings is reversed."

---

[2] This court's original opinion issued in April 2016. *Menchaca* originally issued in April 2017, but the Supreme Court of Texas withdrew its original opinion and judgment, and reissued a new opinion and judgment in April 2018.

The Supreme Court of Texas has held that when there is a conflict between the language of an appellate court's judgment and the language of its opinion, the judgment controls. *See Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 277 (Tex. 1996). In its judgment, the higher court "reversed" our judgment on State Farm's first issue and remanded for its reconsideration; therefore, we will proceed to the merits. *See* Tex. P. App. P. 60.2.

## B. Applicable law and standard of review

Upon motion and reasonable notice, a trial court may "disregard any jury finding on a question that has no support in the evidence." Tex. R. Civ. P. 301.[3] A trial court also may disregard a jury finding if it is immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). A finding is immaterial when the corresponding question either: (1) should not have been submitted; (2) calls for a finding beyond the province of the jury, such as a question of law; or (3) was properly submitted but has been rendered immaterial by other findings. *Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *Spencer*, 876 S.W.2d at 157.

We review the grant or denial of a motion to disregard jury findings as a legal-sufficiency challenge. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Id.* To sustain a

---

[3] In passing in a footnote, State Farm argues that the trial court erred by disregarding jury findings when the Fuenteses did not file a motion to disregard. We disagree. In their response to State Farm's motion for judgment and request for judgment in their favor, the Fuenteses expressly asked the trial court to disregard the jury findings in questions 1b and 2. *See Hodges v. Rajpal*, 459 S.W.3d 237, 244 (Tex. App.—Dallas 2015, no pet.) ("Although not captioned a motion or supplemental motion for JNOV, it is clear from reading Rajpal's response and supplemental response that he was requesting that the trial court disregard a number of the jury findings and to [render] judgment in his favor."). The parties also expressly argued whether the trial court should disregard such findings at the hearing on the motion for judgment.

challenge to the legal sufficiency of the evidence supporting a jury finding, the reviewing court must find that (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004). We measure the sufficiency of the evidence against the jury charge when there has been no objection to it, or when, as here, any objection made below is not raised on appeal. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005).

Insurance policies are contracts and, as such, are subject to rules applicable to contracts generally. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). The contention that a party to a contract is excused from further performance because of a prior material breach by the other contracting party is an affirmative defense which must be pleaded and proved. *See* Tex. R. Civ. P. 94; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Therefore, State Farm bore the burden to show the Fuenteses' prior material breach of the policy.[4]

---

[4] In their live answer, State Farm did not expressly plead "prior material breach" as an affirmative defense. State Farm instead alleged that the Fuenteses failed to comply with the policy and there was a failure of consideration based on their failure to comply. *See 701 Katy Bldg., L.P. v. John Wheat Gibson, P.C.*, No. 05-16-00193-CV, 2017 WL 3634335, at *12 (Tex. App.—Dallas Aug. 24, 2017, pet. denied) (mem. op.) (discussing interchangeable usage of terms "prior material breach" and "failure of consideration" (citing *In re Estate of Snow*, No. 12-11-00055-CV, 2012 WL 3793273, at *11–12 (Tex. App.—Tyler Aug. 30, 2012, no pet.) (mem. op.))).

The materiality of a breach—the question of whether a party's breach of a contract will render the contract unenforceable—generally presents a dispute for resolution by the trier of fact. *See Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983). In determining the materiality of an insured's breach, courts consider the extent to which the insurer will be deprived of the benefit it reasonably could have anticipated had the breach not occurred. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994); *see also Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 768 (Tex. 2014) ("If the insurer receives its reasonably anticipated benefit despite the insured's breach, the breach is immaterial, the insurer is not prejudiced, and the insurer is not excused from performance."). The less the insurer is deprived of the expected benefits, the less likely the breach is material. *See Hernandez*, 875 S.W.2d at 693. "[M]ateriality may be decided as a matter of law . . . if reasonable jurors could reach only one verdict." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam).

"While a party's nonmaterial breach does not excuse further performance by the other party, neither does the second breach excuse the first." *Id.* at 437. "A material breach excuses *future* performance, *not past* performance." *Id.* In other words, "[a] party in default on a contract is not relieved by a subsequent breach by the other party." *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 689 (Tex. 1981).

## C. Legally-insufficient evidence to support prior-material-breach findings

In their first issue, State Farm argues that it was not obligated to pay any additional policy benefits because the Fuenteses materially breached their policy obligations. State Farm argues that the trial court erred in disregarding the jury findings about the Fuenteses' prior material breach (questions 1b and 2) because there is substantial evidence supporting the findings and the findings are material. According to State Farm, *Menchaca* instructs that insureds who cannot recover

additional benefits under their policy cannot recover benefits under extra-contractual claims.

The Fuenteses respond that to the extent *Menchaca* applies, it supports affirmance of the final judgment because they prevailed on their contract claim. The Fuenteses argue the trial court properly disregarded the jury findings that the Fuenteses committed a prior material breach of the policy because there was no evidence supporting such findings.

The Fuenteses' insurance policy imposed the following "Duties After Loss" on them:

a. give immediate notice to us or our agent. . . . ;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged . . . property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other insured:

(a) statements; and

(b) examinations under oath; and

(4) produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

e. submit to us, within 91 days, after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and

belief:

    (1)    the time and cause of loss;

    (2)    interest of the insured and all others in the property involved and all encumbrances on the property;

    (3)    other insurance which may cover the loss;

    (4)    changes in title or occupancy of the property during the term of the policy;

    (5)    specifications of any damages building and detailed estimates for repair of the damage;

    (6)    an inventory of damaged . . . property described in []c.

    (7)    receipts for additional living expenses incurred and records supporting the fair rental value loss; and

    (8)    evidence or affidavit supporting a claim under the . . . coverage, stating the amount and cause of loss.

The policy imposed the following "Duties After Loss" on State Farm:

a. Within 15 days after we receive your written notice of claim, we must:

(1) acknowledge receipt of the claim.

If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment;

(2) begin any investigation of the claim;

(3) specify the information you must provide in accordance with "Your Duties After Loss" . . . .

We may request more information, if during the investigation of the claim such additional information is necessary.

b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

(1) within 15 business days; or

(2) within 30 days if we have reason to believe the loss resulted from arson.

11

c. If we do not approve payment of your claim or require more time for processing your claim, we must:

(1) give the reasons for denying your claim; or

(2) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

In the jury charge, question 1 provided:

QUESTION 1[5]

Did either of those listed below fail to comply with the insurance policy?

A failure to comply must be material. In order for Candelario Fuentes' and Maria Fuentes' failure to comply with their duties after loss to be material, State Farm must have been prejudiced by Candelario Fuentes' and Maria Fuentes' failure to comply. State Farm was prejudiced only if its rights and/or obligations under the policy were detrimentally affected by Candelario Fuentes' and Maria Fuentes' failure to comply, if any.

Answer "Yes" or "No."

a. State Farm:

Answer: _____

b. Candelario Fuentes and Maria Fuentes[6]

Answer: _____

The jury answered yes as to both State Farm and the Fuenteses.

---

[5] State Farm objected to question 1 because it did not "include the specific policy conditions language that State Farm has presented evidence of and seeks a jury finding of for [sic] whether or not the [Fuenteses] complied with their duty under the policy." State Farm further objected to question 1 "to the extent that it combines the questions of breach for both parties because the duties for both parties are different." The trial court overruled these objections. State Farm does not raise any jury-charge challenge on appeal.

[6] The Fuenteses objected to the submission of question 1b "because as a matter of law State Farm has not established—not offered any evidence of prejudice, substantial prejudice to its rights or obligations under the policy." At the time, the trial court overruled this objection.

Question 2 provided:

> If you answered "Yes" to Question 1a and 1b, then answer the following question. Otherwise, do not answer the following question.
>
> QUESTION 2[7]
>
> Who failed to comply with the insurance policy first?
>
> Answer "Candelario Fuentes and Maria Fuentes" or "State Farm."
>
> Answer: _____

The jury answered that the Fuenteses were the first to breach.

*The Fuenteses' alleged breaches before November 12, 2008.* State Farm identifies evidence that the Fuenteses waited approximately ten days to report their claim to State Farm and did not report interior damage; did not respond to three follow-up phone calls from State Farm and to a letter from State Farm; and did not provide photos of the interior of their house to State Farm. However, jury findings *not challenged* by State Farm indicate there was no breach by the Fuenteses with regard to provision of notice or documentation related to their claim or that such breach was excused. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)

---

[7] State Farm objected to question 2, arguing:

> The second question we object on the grounds that it is immaterial who breached the contract first. If the Plaintiffs breached the condition that we are seeking in this case, then that doesn't automatically make it so that they got coverage for things that are not covered.
>
> If they breached the policy condition to protect the property from further damage or repair the damaged property, that damage is not covered regardless of the [sic] whether or not State Farm breached the contract with regard to different damages.
>
> So, basically the two duties, that is the duty that State Farm has to fulfill is separate from the duty of that Plaintiffs are to fulfill. So, the timing of each is—doesn't matter in our opinion.

The trial court overruled this objection. State Farm does not challenge this ruling on appeal. Instead, State Farm takes the contrary position that the jury's finding in question 2 is material to its affirmative defense of prior material breach.

(unchallenged jury findings are binding unless contrary is established as matter of law or no evidence supports findings). In its answers to questions 6 and 7, the jury found that the Fuenteses provided "written notice of claim to State Farm" reasonably apprising State Farm "of the facts related to the claim" on September 22, 2008. Moreover, in its answer to question 10, the jury found that State Farm waived its right to written notice of a claim from the Fuenteses. In its answers to questions 8 and 9, the jury found that the Fuenteses provided all items, statements, and forms reasonably requested and required by State Farm as to their claim relating to Hurricane Ike on November 12, 2008.

In any event, the record does not reflect evidence that any such breach detrimentally affected State Farm's rights and/or obligations under the policy. To support State Farm's affirmative defense of prior material breach, there must be actual evidence that, had the Fuenteses complied with the notice and documentation provisions, State Farm otherwise would have been in a better position with regard to its rights and/or obligations under the policy. There is no evidence that any delay by the Fuenteses in reporting their claim prejudiced State Farm. *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008) ("[A]n insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."); *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 288 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("[T]he insurer may not disclaim coverage on the basis of prejudice that is only theoretical or presumed merely from the length of delay."). Nor is there any evidence that lack of detail about the Fuenteses' claim prejudiced State Farm. To the contrary, the only evidence was that any information received from the Fuenteses did not "limit" or "set the parameters" of State Farm's claim investigation, much less detrimentally affect its adjustment or handling of the claim under the policy.

14

Although State Farm attempts to rely on the Fuenteses' alleged failure to make any reasonable temporary repairs or protect the property "after the storm" and before November 12, our review of the record does not reveal any actual evidence of this. Namirr, State Farm's adjuster, generally testified that an "example" of an insured "mitigat[ing] damages" "would be to like—it would with [sic] to tarp a roof if you had leaking through the roof." But this does not prove anything regarding *these insureds*, the Fuenteses, and their property after the storm and before State Farm investigated, adjusted, and closed their claim. This is not evidence that the Fuenteses did not comply with any duty under their policy. Moreover, State Farm's consistent position was that the Fuenteses did not suffer any water leaking through their roof as a result of Hurricane Ike. In other words, if Hurricane Ike caused no interior damage, then the Fuenteses had no duty to protect the property from further interior damage.

*The Fuenteses' alleged breaches on or after November 12, 2008.* State Farm identifies evidence that the Fuenteses did not make permanent roof repairs after State Farm paid on their claim and did not complain to State Farm that they had not been paid enough until they filed suit. The Fuenteses contend that such failures did not amount to breaches of any duty under the policy nor was there evidence that State Farm was prejudiced in its rights and/or obligations under the policy by these subsequent failures. Even assuming that such failures constituted material breaches of the policy, they occurred *after* State Farm paid on the Fuenteses' claim on November 12, 2008, the date the jury found that the Fuenteses had provided State Farm with all it "reasonably requested and required . . . as to their claim relating to Hurricane Ike." State Farm does not challenge this finding in question 8 or that it failed to comply with the policy in question 1a. *See McGalliard*, 722 S.W.2d at 696. State Farm also does not challenge the jury's finding in question 3—that the

15

Fuenteses suffered $18,818 in damages resulting from State Farm's "failure to comply"—when the instruction expressly defined damages as "[t]he difference . . . between the amount paid by State Farm to Candelario and Maria Fuentes for their Hurricane Ike damages and the amount that should have been paid by State Farm to Candelario and Maria Fuentes under the policy." *See id.* In other words, on November 12, State Farm had all it needed to properly investigate, adjust, and handle the Fuenteses' Hurricane-Ike claim to provide them with "the amount that should have been paid," but yet did not pay any benefits to the Fuenteses for their covered interior damage.

We already have determined that any pre-November 12 breaches by the Fuenteses were not material. Thus, on November 12, State Farm was the first party to materially breach the policy. *See Menchaca*, 545 S.W.3d at 494 ("[I]if the policy does cover the loss, the insurer necessarily breaches the policy if it fails to pay benefits for the loss because the insured is entitled to those benefits." (footnote omitted)). So, any material breach by the Fuenteses on or after November 12 would not qualify as a matter of law to relieve State Farm from its own breach. *See Bartush-Schnitzius Foods*, 518 S.W.3d at 437; *Mead*, 615 S.W.2d at 689; *Forman v. Classic Century Homes, Ltd.*, No. 02-12-00362-CV, 2014 WL 6840173, at *6 (Tex. App.—Fort Worth Dec. 4, 2014, no pet.) (mem. op.) ("[A] party in breach may not set up a subsequent breach by the other party to provide relief from its own breach.").

In sum, even construed in the light most favorable to the findings, the record does not support that any breach committed by the Fuenteses before November 12, 2008, was material. State Farm did not otherwise believe that it would have been better able to investigate, adjust, or handle the Fuenteses' claim or would have taken a different position regarding whether the Fuenteses' interior damage was caused by Hurricane Ike and covered by the policy. *See Hernandez*, 875 S.W.2d at 694 (insurer

16

not prejudiced when it "remains in the same position it would have occupied" had insured complied with policy). Again, even construed in the light most favorable to the findings, the record reflects that any breach committed by the Fuenteses on or after November 12 did not occur before and would not excuse State Farm's earlier material breach.

Because there was not legally-sufficient evidence to support the jury's answers to questions 1b and 2, and the questions were immaterial and should not have been submitted to the jury, the trial court did not err by disregarding the findings.[8] Accordingly, we overrule this portion of State Farm's first issue and conclude that the Fuenteses prevailed on their breach-of-contract claim.

## D. In light of *Menchaca*

We now proceed to consider what this conclusion means "in light of *Menchaca*." *See Fuentes*, 549 S.W.3d at 588. The *Menchaca* court distilled and announced "five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context":

- First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits.

- Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits.

- Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual

---

[8] We need not reach the Fuenteses' argument that even if they committed a prior material breach of the policy, State Farm elected to treat the contract as continuing. *See* Tex. R. App. P. 47.1.

damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right.

- Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits.

- And fifth, an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.

545 S.W.3d at 489.

*First rule: The General Rule.* The first rule of *Menchaca* is: "[A]n insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *Id.* at 490.[9] We already have rejected State Farm's arguments that the trial court erred in disregarding the prior-material-breach findings. Thus, the general rule is met when the Fuenteses prevailed on their breach-of-contract claim. *See id.* at 490–95.

*Second rule: The Entitled-to-Benefits Rule.* The second rule of *Menchaca* is: "[A]n insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits." *Id.* at 495. State Farm does not challenge the jury findings in question 4 that State Farm engaged in unfair or deceptive acts or practices which caused damages to the Fuenteses, specifically: failing to promptly provide the Fuenteses with a reasonable explanation of the factual or legal basis in the policy for the denial of a claim; refusing to pay a claim

---

[9] State Farm argues the first and second rules of *Menchaca* dictate that because the policy does not provide the Fuenteses a right to the additional benefits under the policy, the Fuenteses also cannot recover policy benefits for State Farm's extra-contractual violations. *See* 545 S.W.3d at 490–97.

without conducting a reasonable investigation with respect to a claim; and misrepresenting to the Fuenteses a material fact or policy provision relating to the coverage at issue.[10] *See McGalliard*, 722 S.W.2d at 696. In addition, State Farm does not challenge the jury's finding in question 5a as to the Fuenteses' damages of $18,818 resulting from State Farm's "unfair or deceptive act"—"[t]he reasonable and necessary cost to repair property damaged by Hurricane Ike less any amount

---

[10] Question 4 provided:

QUESTION 4

Did State Farm engage in any unfair or deceptive act or practice that caused damages [sic] Candelario and Maria Fuentes?

Answer "Yes" or "No" as to each subpart.

"Unfair or deceptive act or practice" means any one or more of the following:

a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the liability under the insurance policy issued to Candelario and Maria Fuentes had become reasonably clear; or

Answer: _____

b. Failing to promptly provide to Candelario and Maria Fuentes a reasonable explanation of the factual and legal basis in the policy for the denial of a claim(s); or

Answer: _____

c. Failing to affirm or deny coverage within a reasonable time; or

Answer: _____

d. Refusing to pay a claim without conducting a reasonable investigation with respect to a claim(s); or

Answer: _____

e. Misrepresenting to Candelario and Maria Fuentes a material fact or policy provision relating to the coverage at issue.

Answer: _____

The jury answered "yes" to subparts b, d, and e.

19

previously paid by State Farm to repair the same damage."[11] *See id.* Because the jury

[11] Question 5 provided:

If you answered "Yes" to any part of Question 4, then answer the following question. Otherwise, do not answer the following question.

QUESTION 5

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Candelario and Maria Puentes for their damages, if any, that resulted from the failure to comply you found in response that were caused by an unfair or deceptive act that you found in response to Question number 3.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Consider the following elements of damages, if any, and none other. You shall not award any sum of money on any element if you have otherwise, under some other element awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any.

Answer in dollars and cents for damages, if any.

a. The reasonable and necessary cost to repair property damaged by Hurricane Ike less any amount previously paid by State Farm to repair the same damage.

Answer: $ _____

b. Mental anguish sustained by Candelario Fuentes in the past?

Answer: $ _____

c. Mental anguish sustained by Maria Fuentes in the past?

Answer: $ _____

d. Mental anguish that, in reasonable probability, Candelario Fuentes will sustain in the future.

Answer: $ _____

e. Mental anguish that, in reasonable probability, Maria Fuentes will sustain in the future.

Answer: $ _____

The jury answered "$18,818"—to question 5a; "$8,750"—to questions 5b and c; and "$4,750"—to questions 5d and e. This jury question is predicated on the jury's affirmative answer to question

found that the policy entitled the Fuenteses to receive the additional benefits and that State Farm's statutory violation resulted in their not receiving those benefits, the Fuenteses could recover those additional benefits as "actual damages . . . caused by" the statutory violation. *See* Tex. Ins. Code Ann. §§ 541.151–.152; *Menchaca*, 545 S.W.3d at 494, 495–97 (affirming rule from *Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129 (Tex. 1988)); *Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc.*, No. 01-17-00881-CV, 2019 WL 7044667, at *17 (Tex. App.— Houston [1st Dist.] Nov. 26, 2019, no pet. h.) (insured entitled to amount of policy benefits wrongfully withheld based on jury findings). The second rule of *Menchaca* is met.

*Third rule: The Benefits-Lost Rule.* "A third rule that our precedent recognizes is that an insured can recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under the policy, *if the insurer's conduct caused the insured to lose that contractual right.*" *Menchaca*, 545 S.W.3d at 497. The Fuenteses already have met the first and second rules. Therefore, *Menchaca*'s third rule is not implicated. *See id.* at 497–99.

*Fourth rule: The Independent-Injury Rule.* The first aspect to *Menchaca*'s fourth rule "is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* at 499. "The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500.

---

4 but also goes on to reference "an unfair or deceptive act" found (erroneously) in question 3. Although this question is certainly no model of clarity, neither party raises any jury-charge issue.

First, State Farm argues that the $18,818 awarded by the jury is not recoverable as an "independent injury." *See id.* at 499–500. We already have determined these policy-benefits damages meet the first and second *Menchaca* rules and do not implicate the third rule. *See* Tex. Ins. Code Ann. §§ 541.151–.152; *Menchaca*, 545 S.W.3d at 488–89 ("actual damages" under Insurance Code include "benefit-of-the-bargain" damages), 490–99 (discussing first three rules). Likewise, they do not implicate the fourth rule. *See In re Colonial Cty. Mut. Ins. Co.*, No. 01-19-00391-CV, 2019 WL 5699735, at *3 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, no pet. h.) (mem. op.) (per curiam) (independent-injury rule "does not apply if the insured's statutory or extra-contractual claims 'are predicated on [the loss] being covered under the insurance policy' or if the damages 'flow' or 'stem' from the denial of the claim for policy benefits" (quoting *Menchaca*, 545 S.W.3d at 500)).

State Farm further argues that the Fuenteses' mental-anguish damages violate the fourth rule. *Menchaca* recognizes "that some extra-contractual claims may 'not relate to the insurer's breach of contractual duties to pay covered claims' and may thus 'give rise to different damages.'" 545 S.W.3d at 499 (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 n.3 (Tex. 1995)). "If such damages result from an independent injury 'caused by' the insurer's statutory violation, the insured can recover those damages, just as insureds have always been able to recover 'compensatory damages for the tort of bad faith' under the common law." *Id.* (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994)). "[A]n insured can recover actual damages caused by the insurer's bad-faith conduct if the damages 'are separate from and . . . differ from benefits under the contract.'" *Id.* (quoting *Twin City Fire Ins.*, 904 S.W.2d at 666). *Menchaca* also indicates that if a statutory violation causes an injury that is independent from the loss of benefits, then the insured can recover damages beyond policy benefits. *Id.* at 500.

22

The *Menchaca* court stated that it had "yet to encounter" a successful independent-injury claim and it did not "have . . . occasion to speculate what would constitute a recoverable independent injury"; however, it noted its previous decision in *Twin City Fire Insurance* "identif[ied] mental anguish as an example" of actual, separate damages that an insured could recover when caused by the insurer's tortious conduct. *See Menchaca*, 545 S.W.3d at 499–500; *Twin City Fire Ins.*, 904 S.W.2d at 666–67 (no punitive damages available when jury awarded policy benefits wrongfully withheld but did not award "any additional amounts clearly referable only to the bad faith cause of action, for example, mental anguish damages"). In other words, *Menchaca* did not foreclose the possibility of recovery for mental-anguish damages as an independent injury. Nor does any provision within the Insurance Code preclude recovery for mental-anguish damages. At least one Texas appellate court has since indicated that mental-anguish damages could qualify as an independent injury in an Insurance Code claim under the right circumstances. *See State Farm Lloyds v. Webb*, No. 09-15-00408-CV, 2017 WL 1739763, at *9 (Tex. App.—Beaumont May 4, 2017, pet. denied) (mem. op.) (insured could not recover extra-contractual damages beyond policy benefits for Insurance Code claim when "he did not seek damages for mental anguish" and "failed to demonstrate damages independent from the loss of the benefits").[12]

As indicated, the circumstances in *Menchaca* did not involve any allegation of mental anguish, and the *Menchaca* jury did not award the insured mental-anguish damages. In contrast, here the Fuenteses alleged that they were entitled to actual damages for State Farm's "noncompliance with the Insurance Code," which included both "the loss of the benefits that should have been paid pursuant to the policy" and their "mental anguish." The Fuenteses sought damages for their

---

[12] This opinion issued after the first *Menchaca* opinion.

23

independent injuries: their benefit of the bargain of the policy *and* for their mental anguish.[13] In addition to finding the Fuenteses were entitled to policy-benefits damages, the jury returned separate findings that the Fuenteses were entitled to past and future mental-anguish damages resulting from State Farm's "unfair or deceptive act" totaling $27,000.

Again, State Farm does not challenge that it engaged in tortious conduct— unfair or deceptive acts and practices—which damaged the Fuenteses. What State Farm essentially argues is the evidence was legally insufficient to support that State Farm committed an "extreme" enough act to qualify as an independent injury and that the Fuenteses suffered compensable mental anguish. But the Supreme Court of Texas only specifically "remand[ed] State Farm's first [disregarding-findings] issue . . . in light of *Menchaca.*" *See Fuentes*, 549 S.W.3d at 588. That is, the scope of the remand was not general; it was limited to this particular issue. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). Even under a liberal reading of State Farm's original briefing on its disregarding-findings issue, State Farm did not raise any argument challenging the jury's mental-anguish findings. These unchallenged findings were (and still are) binding on us. *See McGalliard*, 722 S.W.2d at 696. We therefore do not consider State Farm's belated challenges to the jury's mental-anguish findings. *See* Tex. R. App. P. 38.1(i); *Fuentes*, 549 S.W.3d at 588; *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Under the particular circumstances in this case, we therefore conclude *Menchaca*'s fourth rule is met as to the Fuenteses' mental-anguish damages. *See* 545 S.W.3d at 499–500.

---

[13] *See Shellnut v. Wells Fargo Bank, N.A.*, No. 02-15-00204-CV, 2017 WL 1538166, at *14 (Tex. App.—Fort Worth Apr. 27, 2017, pet. denied) (mem. op.) (noting that damages for "mental and emotional distress . . . are not the type of damages seeking the benefit of the bargain").

Finally, State Farm argues that because the Fuenteses have no independent injury, they also cannot recover statutory punitive damages. *See id.* at 500. However, we already have determined that the Fuenteses' $27,000 award for their mental-anguish damages meets the independent-injury rule. Under the Insurance Code, when an insured prevails in a private action for a statutory violation, "on a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award an amount not to exceed three times the amount of actual damages." Tex. Ins. Code Ann. § 541.152(a), (b); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019) ("[A]n award of some amount of actual damages is a prerequisite to an additional award of up to three times that amount (citing Tex. Ins. Code § 541.152(b))). The Fuenteses requested "treble damages" under section 541.152, and the jury awarded the Fuenteses an additional $7,527 "because State Farm's conduct was committed knowingly." State Farm does not challenge the jury's finding in question 11 that State Farm knowingly engaged in an unfair or deceptive act or practice: namely, in its refusal to pay a claim without conducting a reasonable investigation with respect to a claim. *See McGalliard*, 722 S.W.2d at 696. And the amount awarded by the jury was permissible under the statute. *See* Tex. Ins. Code Ann. § 541.152(b). Likewise, we conclude *Menchaca*'s fourth rule is met as to the Fuenteses' recovery for statutory punitive damages. *See* 545 S.W.3d at 499–500.

*Fifth rule: The No-Recovery Rule. Menchaca*'s fifth rule is: "An insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Id.* at 500. Having found no issues with the other four rules as to any of the Fuenteses' damages, we conclude the fifth rule is met.

Because we conclude that the trial court did not err in disregarding the jury

findings on prior material breach, the jury's remaining findings are entirely consistent and do not conflict, much less fatally conflict.[14] Therefore, we need not address State Farm's argument regarding any fatal conflict in the jury findings as in *Menchaca*. *See* Tex. R. App. P. 47.1. Likewise, because we have already addressed the Fuenteses' Insurance Code claims in light of *Menchaca*, we also do not need to reach State Farm's argument that the *Menchaca* rules also govern common-law bad-faith and fraud claims. *See id.*

We overrule the reminder of State Farm's first issue.

In its second issue, State Farm argues that if this court finds error mandating reversal and does not render a take-nothing judgment, then this court should remand for a new trial in the interest of justice. Because we do not find any error in the trial court's judgment mandating reversal, we also overrule State Farm's second issue.

### III. CONCLUSION

Having overruled both of State Farm's issues, we affirm the trial court's judgment.

/s/ Charles A. Spain
Justice

Panel consists of Justices Zimmerer, Spain, and Hassan.

---

[14] State Farm acknowledges that setting aside the prior-material-breach disregarding-findings issue, questions 1, 3–5, and 13–16 (the bad-faith claim findings) "may have provided the Fuenteses the required findings on their contract and extra-contractual claims."

26